**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| Andrea Greene, *on behalf of herself and all others similarly situated,* | : <br> : <br> : |
| Plaintiff, | : <br> : |
| vs. | : Civil Action No.: <br> : |
| Piping Rock Health Products, LLC d/b/a Natural Vitality, | : <br> : |
| Defendant. | : <br> : |

---

For this Class Action Complaint, Plaintiff Andrea Greene, by undersigned counsel, states as follows:

**<u>INTRODUCTION</u>**

1.      Defendant Piping Rock Health Products, LLC d/b/a Natural Vitality ("Defendant" or "Natural Vitality") formulates, manufactures, advertises and sells "CALM GUMMIES Magnesium Supplement" products (the "Magnesium Supplements" or "Supplements") throughout the United States.   The labels on the Supplements claim that one serving consisting of four (4) gummies contain 330 mg of magnesium derived from a magnesium citrate.

2.      But the Magnesium Supplements do not contain 330 mg of magnesium from magnesium citrate in a 4-gummie serving and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels.   Indeed, it is impossible to fit 330 mg of elemental magnesium in four gummies; the magnesium citrate that Natural Vitality contends that it uses simply possesses far too low a concentration of magnesium to do so. Thus, the Supplements contain significantly less magnesium than what is claimed and displayed or

1

magnesium from sources other than magnesium citrate.

3.     In misstating the actual magnesium content of the Supplements, Natural Vitality violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling.   Defendant's conduct also constitutes fraudulent concealment and violations of the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.* Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

**PARTIES**

4.     Plaintiff Andrea Greene ("Plaintiff" or "Ms. Greene") is and at all times relevant hereto was an adult individual residing in Cumming, Georgia.   Ms. Greene has purchased Natural Vitality's Supplements in Georgia within the last four years, including at a Kroger grocery store in Cumming, Georgia on June 14, 2204.   Ms. Greene viewed the front and back label of Defendant's Supplements when she purchased the product.

5.     Defendant Piping Rock Health Products, LLC d/b/a Natural Vitality ("Natural Vitality" or "Defendant") is a New York business entity with a principal place of business at 3900 Veterans Memorial Highway, Suite 200, Bohemia, New York 11716. From its New York headquarters Natural Vitality markets, advertises, distributes and sells its Supplements throughout the United States.

**JURISDICTION AND VENUE**

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Natural Vitality sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales, combined

2

with Plaintiff's requested injunctive relief, punitive damages and attorneys' fees, exceeds $5,000,000, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states.

7.      Venue is proper in this District and this Court has personal jurisdiction over Natural Vitality because Natural Vitality is a New York business entity and its principal place of business is located in this District.

## **FACTUAL ALLEGATIONS**

### ***a.  Defendant's Magnesium Supplements do not contain 330 mg of magnesium derived from magnesium citrate***

8.      The amount and type of magnesium contained within Defendant's Magnesium Supplements is material to any consumer seeking to purchase the Magnesium Supplements.

9.      Defendant states on the Supplement labels that the Supplements contain 330 mg of magnesium per serving and the disclosed magnesium is derived from magnesium citrate:



# Supplement Facts

Serving Size: 1 Gummy for Children Ages 4 through 12
4 Gummies for Ages 13 and Above
Servings Per Container: 60; 15

|  | Amount Per 1 Gummy | % Daily Value | Amount Per 4 Gummies | % Daily Value |
|---|---|---|---|---|
| Calories | 7 |  | 28 |  |
| Total Carbohydrate | 2 g | <1%** | 8 g | 3%** |
| Dietary Fiber | 0 g | 0%** | 1 g | 4%** |
| Total Sugars | <1 g | † | 3 g | † |
| Includes Added Sugars | <1 g | <2%** | 3 g | 6%** |
| Magnesium (as magnesium citrate) | 83 mg | 20% | 330 mg | 79% |

**Percent Daily Values are based on a 2,000-calorie diet.
†Daily Value not established.

**Other Ingredients:** Water, organic cane sugar, organic tapioca syrup, inulin, vegetable glycerin, agar, locust bean gum, natural flavors, citric acid, organic black carrot (color).

Contains no artificial flavor or synthetic color.



GLUTEN-FREE  VEGAN



NO ARTIFICIAL FLAVORS SYNTHETIC COLORS

10.     Indeed, on the "Supplement Facts" label above Natural Vitality claims that a single serving of 4 gummies contains "330 mg" of "Magnesium (as magnesium citrate)."[1]

11.     The labels additional state that the 330 mg of magnesium represent 79% of the Daily Value.   Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children four years and older is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

12.     The above representations constitute an express warranty regarding the Magnesium Supplements' magnesium content.

### b. It is impossible for one serving of the Magnesium Supplements to contain 330 mg of elemental magnesium

13.     Defendant's representations are false and misleading.

14.     It is impossible for one 4-gummie serving of Defendant's Magnesium Supplements to contain the advertised and warranted 330 mg of elemental magnesium due to the magnesium content of magnesium citrate.

15.     Indeed, one serving of the gummies weighs at most 10 grams, 8 grams of which are comprised of carbohydrates, leaving at most 2 grams to contain the disclosed magnesium.

---

[1] *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/ (the U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound.") (last visited December 7, 2023).

16.     Magnesium citrate contains only 11.23% elemental magnesium.[2]

17.     Thus, even if the Supplements contained only magnesium citrate and carbohydrates the Supplements would contain 224 mg of magnesium per serving, not 330 mg of magnesium as warranted on the Supplements' label (2,000 mg x 0.1123 = 224.60).   However, the Supplements also contain, *inter alia,* water and citric acid in the gummies, thus the true amount of magnesium from magnesium citrate is even lower.

18.     In light of the foregoing, Defendant's representations that a 4-gummie single serving of the Magnesium Supplements contains 330 mg of elemental magnesium from magnesium citrate is false.

19.     To the extent that one serving of the Supplements does contain 330 mg of elemental magnesium, such magnesium is not derived solely from magnesium citrate and instead must come from an alternative, undisclosed source of magnesium.

20.     For instance, the magnesium may be derived from magnesium oxide, a cheaper heavy form of magnesium supplements commonly used in laxatives.   Magnesium oxide contains a higher percentage of elemental magnesium than magnesium citrate.   It is less desirable to consumers because, *inter alia*, it is not absorbed by the body as well as other sources of magnesium and is inferior at raising their magnesium levels.

21.     Whether the Supplements contain the oxide or not, they do not contain 330 mg of elemental magnesium derived magnesium citrate as advertised.

22.     The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law.   The Federal

---

[2] https://en.wikipedia.org/wiki/Magnesium_citrate

Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

23.    Natural Vitality's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

24.    Georgia law likewise prohibits the misbranding of food in a way that parallels the FDCA, deeming food misbranded if "[i]ts labeling is false or misleading in any particular." Ga. Code Ann. § 26-2-28.

25.    Natural Vitality's representations regarding the magnesium contents of its Magnesium Supplements – including its representation that there are 330 mg of magnesium derived from magnesium citrate – are material. Reasonable consumers of Magnesium Supplements base their purchasing decisions on the advertised and warranted amount of magnesium contain therein and the source from which such magnesium is derived.  Consumers specifically prize magnesium derived from magnesium citrate over other sources of magnesium.  Additionally, consumers reasonably rely of Defendant's label to accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Supplements.

8

Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

26.    Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Supplements contains 330 mg of elemental magnesium from magnesium citrate.

27.    The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products do not contain 330 mg of magnesium derived from magnesium citrate per serving. The amount and source of actual magnesium provided, and the measure of magnesium per serving, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium derived from magnesium are left to ingest less magnesium from that source than Defendant states will be provided, and are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium citrate promised by the Defendant.

28.    Because Plaintiff and Class Members purchased a product that contains less magnesium from magnesium than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact and have paid a price premium for the Supplements. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition of the magnesium content of the Magnesium

9

Supplements, they would not have purchased such Products, or would have only paid for the magnesium from magnesium citrate actually delivered with the Supplements.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

29.    Plaintiff brings this action on his own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

**Nationwide Class:** All persons who purchased Defendant's Magnesium Supplements in the United States during the four-year period preceding the filing of the complaint.

**Georgia Class:** All persons who purchased Defendant's Magnesium Supplements in Georgia during the four-year period preceding the filing of the complaint.

30.    Any legal entity, Defendant and its employees or agents are excluded from the Class.

### B.  Numerosity

31.    Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, Plaintiff believes, and on that basis alleges, that Natural Vitality has sold its Magnesium Supplements to thousands of Georgia purchasers during the Class Period, thousands of more persons around the country and therefore there are thousands of members in the Classes.

### C.  Common Questions of Law and Fact

32.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.   These questions include:

a.    Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's

magnesium content;

b.     Whether Defendant's sale of the Magnesium Supplements constitutes unfair
methods of competition and unfair or deceptive acts or practices including: whether
Defendant misrepresents the source, sponsorship, approval, or certification of their
Magnesium Supplements; whether Defendant misrepresents that the Magnesium
Supplements have benefits which they do not have; whether Defendant represents
that the Magnesium Supplements are of a particular standard or quality if it is of
another; and whether Defendant advertises its Magnesium Supplements with intent
not to sell them as advertised;

c.     Whether Defendant's sale of the Magnesium Supplements constitutes false,
misleading and deceptive advertising;

d.      Whether Defendant's sale of the Magnesium Supplements violates the Georgia
Fair Business Practices Act;

e.     Whether Defendant's sale of the Magnesium Supplements constitutes a breach of
warranty;

f.     Whether Defendant concealed material facts concerning the Magnesium
Supplements;

g.     Whether Defendant engaged in unconscionable commercial practices in failing to
disclose material information concerning the Magnesium Supplements;

h.     The nature and extent of damages, restitution, equitable remedies, and other relief
to which Plaintiff and the Class are entitled; and

i.     Whether Plaintiff and the Classes should be awarded attorneys' fees and the costs
of suit.

**D.** **Typicality**

33.     The Plaintiff's claims are typical of the claims of the Classes since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

**E.** **Protecting the Interests of the Class Members**

34.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

**F.** **Proceeding Via Class Action is Superior and Advisable**

35.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

36.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiff on behalf of the Nationwide Class or in the alternative the Georgia Class)**

37.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

38.     By failing to disclose and concealing the contents of the Magnesium Supplements from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include the amount of magnesium derived from magnesium citrate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

39.     As the manufacturer and distributor of the Supplements, Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium derived from a magnesium citrate advertised and warranted and were not suitable for their intended use.

40.     Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

a.     Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the type(s) of magnesium Defendant included in the Supplements;

b.     Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium derived from magnesium citrate as advertised and warranted; and,

c.     Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's

13

Magnesium Supplements.

41.     On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

42.     The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

43.     Plaintiff and the Classes relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

44.     By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

45.     Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium from a magnesium citrate, they would not have purchased the Magnesium Supplements or would have paid less for them.

46.     As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

47.     Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

48.     Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be

determined according to proof.

49.     Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchases of falsely advertised and misbranded Magnesium Supplements.   Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving Magnesium Supplements of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

50.     Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## SECOND CAUSE OF ACTION
### Breach of Express Warranty Pursuant to Ga. Code Ann. § 11-2-313
### (Plaintiff Greene On Behalf of the Georgia Class)

51.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

52.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that one serving of the product contains 330 mg of

15

magnesium derived from magnesium citrate.

53.     The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

54.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

55.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium from magnesium citrate, as alleged above.

56.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

**THIRD CAUSE OF ACTION**
**Violation of the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390 et seq.**
**(Plaintiff Greene On Behalf of the Georgia Class)**

57.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

58.     The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 101-393(b), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or

16

services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code Ann. § 10-1-393(b).

59.     Defendant engaged in "trade or commerce" within the meaning of Ga. Code Ann. § 10-1-393(b).

60.     Plaintiff and Georgia Class members are "consumers" within the meaning of Ga. Code Ann. § 10-1-393(b).

61.     Georgia law likewise prohibits the misbranding of food in a way that parallels the FDCA, deeming food misbranded if "[i]ts labeling is false or misleading in any particular." Ga. Code Ann. § 26-2-28.

62.     At all material times, Defendant engaged in a scheme of offering the Magnesium Supplements for sale to Plaintiff, and other members of the Class by way of, *inter alia*, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

63.     These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

64.      Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' magnesium content were false, misleading and/or deceptive.

65.     Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers,

17

including Plaintiff and members of the Class, were among the intended targets of such representations.

66.     The above acts of Defendant, in disseminating said misleading and deceptive statements to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of magnesium, and constitute unfair and deceptive acts and practices and materially misleading advertising.

67.     Plaintiff and Class members were harmed and suffered injury as a result of Defendant's conduct. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

68.     Accordingly, Plaintiff and members of the Class seek damages including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

69.     Plaintiff Greene and the Georgia Class are entitled to recover actual and treble damages pursuant to Ga. Code Ann. § 10-1-399(a).

70.     Plaintiff Greene also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA pursuant to GA Code Ann. § 10-1-399.

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability Pursuant to Ga. Code. Ann. §§ 11-2-314
### (Plaintiff Greene On Behalf of the Georgia Class)

71.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

72.    Defendant is a merchant with respect to the Magnesium Supplements.

73.    The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

74.    An implied warranty that the Magnesium Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Supplements.

75.    Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium citrate, do not provide the benefits associated with the warranted and advertised 330 mg of magnesium from magnesium citrate, and thus were not in merchantable condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

76.    Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

77.    As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

19

a.  An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;;

b.  An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.  Reasonable attorneys' fees and costs;

f.  Pre-judgment and post-judgment interest, as provided by law;

g.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: December 5, 2024                PLAINTIFF, Andrea Greene

                            By:    */s/ Sergei Lemberg*
                                Sergei Lemberg
                                LEMBERG LAW, LLC
                                43 Danbury Road
                                Wilton, CT 06897
                                Telephone: (203) 653-2250
                                Facsimile:   (203) 653-3424
                                slemberg@lemberglaw.com
                                *Attorneys for Plaintiff*