**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ANDREA GREENE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PIPING ROCK HEALTH PRODUCTS, INC. d/b/a NATURAL HEALTH VITALITY,<br><br>Defendant. | X<br>:<br>:<br>:<br>:<br>X | CIVIL ACTION NO.<br>2:24-cv-08383-JMA-LGD |

# PIPING ROCK HEALTH PRODUCTS, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS


Jeffrey S. Jacobson
W. Joshua Lattimore
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 43rd Floor
New York, New York 10036
Tel.: (212) 248-3191
Jeffrey.Jacobson@faegredrinker.com
Joshua.Lattimore@faegredrinker.com

*Attorneys for Defendant*
*Piping Rock Health Products, Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. Plaintiff's Claims Are Readily Distinguishable From *Cohen v. Nutricost* and *Stonehart v. Now Health Group*, the Other Cases Prosecuted By Her Counsel. ........ 2

II. Because Plaintiff Premised Her Claims on Nothing More Than An Unwarranted Assumption, Her Complaint Fails. ........ 6

III. Plaintiff's Fraudulent Concealment and Implied Warranty Claims Under Georgia Law Also Fail For Other Reasons. ........ 7

A. Plaintiff Has Not Pleaded a Valid Claim for Fraudulent Concealment. ........ 7

B. Plaintiff's Implied Warranty of Merchantability Claim Fails Due to the Absence of Privity Between Plaintiff and Piping Rock. ........ 9

CONCLUSION ........ 9

WORD COUNT CERTIFICATION ........ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Cohen v. Nutricost*,
747 F. Supp. 3d 467 (E.D.N.Y. 2024)....................2, 3, 5

*Cohen v. Nutricost*,
Case No. 23 Civ. 6387 (E.D.N.Y.), Dkt. No. 58-3 (Settlement Agreement filed on December 29, 2025)....................2

*Elias v. Rolling Stone LLC*,
872 F.3d 97 (2d Cir. 2017)....................4

*Evergreen East Cooperative v. Whole Foods Market, Inc.*,
2023 WL 545075 (2d Cir. Jan. 27, 2023)....................6

*Francoforte v. Graco Children's Products, Inc.*,
2026 WL 582859 (N.D. Ga. Jan. 7, 2026)....................8

*Jones v. Brookhaven Science Assocs. LLC*,
2024 WL 4145777 (E.D.N.Y. Sept. 10, 2024)....................4

*Lozano v. Bowmar Nutrition LLC*,
2021 WL 4459660 (C.D. Cal. Aug. 19, 2021)....................7

*MECO Elec. Co. v. Siemens Industry, Inc.*,
2022 WL 4085832 (S.D.N.Y. Sept. 6, 2022)....................4

*Monopoli v. Mercedes-Benz USA, LLC*,
2022 WL 409484 (N.D. Ga. Feb. 10, 2022)....................8

*Pearson v. Gesner*,
125 F.4th 400 (2d Cir. 2025)....................4

*Rivera v. S.C. Johnson & Son, Inc.*,
No. 20 Civ. 3588, 2021 WL 4392300 (S.D.N.Y. Sept. 24, 2021)....................6

*Stonehart v. Now Health Grp, Inc.*,
2026 WL 658887 (N.D. Ill. Mar. 9, 2026).................... *passim*

**Regulations**

21 C.F.R. § 101.9....................1, 4, 5

21 C.F.R. § 101.12....................5

21 C.F.R. § 101.36....................5

## PRELIMINARY STATEMENT

Plaintiff Andrea Greene's opposition ("Opp.") to defendant Piping Rock Health Products, Inc.'s ("Piping Rock's") motion to dismiss confirmed that Plaintiff and her counsel did no more than the following—which did not constitute a sufficient pre-suit investigation—before filing a federal lawsuit alleging consumer fraud:

- They consulted Wikipedia (and nothing else) to determine that a Calm Magnesium gummy should contain at least 512 milligrams of trimagnesium citrate to deliver 83 milligrams of magnesium. Second Amended Complaint ("SAC") ¶ 16; Opp. at 11.
- They put four Calm Magnesium gummies on an apparently uncalibrated, personal use (versus professional laboratory quality) scale and determined they weighed 9,622 milligrams. SAC ¶ 15; Opp. at 6.
- They noted that the Supplement Facts Panel ("SFP") for the product states that each gummy contains "2g" of "Total Carbohydrate." SAC ¶ 9; Opp. at 5.
- They subtracted 2 grams (2,000 milligrams) from what they determined the weight of each gummy to be (2,405.5 milligrams) and concluded that because the remaining weight (405.5 milligrams) is less than the 512 milligrams of trimagnesium citrate they deemed necessary to deliver 83 milligrams of magnesium, the product is mislabeled. SAC ¶¶ 15-17; Opp. at 6.

The flaw in Plaintiff's theory, however—assuming for the sake of argument that their weights and measures are correct—is that federal regulations required Piping Rock to state the carbohydrate weight of the gummy as the nearest whole number (here, "2g"). *See* Opp. at 9, *citing* 21 C.F.R. § 101.9(c)(6). Plaintiff's brief did not dispute this, nor does Plaintiff dispute that if the carbohydrate weight of the gummy is slightly under 2 full grams (which it is), rounded up to 2 grams on the SFP to comply with the regulation, Plaintiff's untested assumption about the product not leaving enough room for magnesium fails. *See id.* This is why Plaintiff had no business filing a lawsuit without having a laboratory test the product. A reputable lab could have told Plaintiff exactly how much magnesium is in the gummy and the source of that magnesium. Without lab testing, Plaintiff has done no more than *guess* that the gummy's carbohydrate weight was *not*

rounded up as the regulation required. Plaintiff's claim as pleaded is implausible—indeed, sanctionably frivolous—and the Court should dismiss the SAC with prejudice.

## ARGUMENT

### I. Plaintiff's Claims Are Readily Distinguishable from *Cohen v. Nutricost* and *Stonehart v. Now Health Group*, the Other Cases Prosecuted By Her Counsel.

Plaintiff's counsel, Lemberg Law LLC, has filed at least two other cases against sellers of magnesium supplements. *See* Opp. at 1, *citing Stonehart v. Now Health Grp, Inc.*, 2026 WL 658887 (N.D. Ill. Mar. 9, 2026); and *Cohen v. Nutricost*, 747 F. Supp. 3d 467 (E.D.N.Y. 2024). It should be noted at the outset that Lemberg Law apparently was correct in believing that the products at issue in those other cases—a magnesium glycinate capsule in *Cohen* and a magnesium blend softgel in *Stonehart*—contained undisclosed magnesium oxide either in place of or in addition to the other magnesium compounds disclosed on those products' labels. The defendants in *Cohen* and *Stonehart* did not deny that their products contained undisclosed magnesium oxide, even while moving (unsuccessfully) to dismiss the plaintiffs' claims for reasons other than the plaintiffs' failure to allege testing. The defendant in *Stonehart* changed its label for the product after the lawsuit began to acknowledge the presence of magnesium oxide. *See Stonehart*, 2026 WL 658887, at *2. The defendant in *Cohen* agreed to a proposed $1,835,000 class action settlement with purchasers of its mislabeled magnesium supplement. *See Cohen v. Nutricost*, Case No. 23 Civ. 6387 (E.D.N.Y.), Dkt. No. 58-3 (Settlement Agreement filed on December 29, 2025).

That Lemberg Law may have been correct about two other magnesium supplements sold by different companies, however, did not give Lemberg Law license to file suit against Piping Rock without a sufficient pre-suit investigation into Piping Rock's specific Product. In both *Cohen* and *Stonehart*, the products at issue were single-ingredient, fixed-size supplements encased in a capsule or softgel. The math behind Lemberg Law's complaints against those companies,

therefore, did not require any assumptions. The products' labels stated they contained only magnesium compounds (not including magnesium oxide), with no other ingredients, but as Lemberg Law alleged in *Cohen* and *Stonehart*, the fixed-size capsule and softgel at issue in those cases were not big enough to hold enough of the advertised compounds for the labels to have been accurate—which, in fact, the defendants later admitted they were not. Likely because those plaintiffs' assumptions were correct, the defendants in *Cohen* and *Stonehart* did not argue that those plaintiffs' claims failed because the plaintiffs' math was wrong or because the plaintiffs did not conduct laboratory testing. And, indeed, had Lemberg Law tested the products the firm challenged in *Cohen* and *Stonehart*, the tests would have confirmed the presence of undisclosed magnesium oxide and thus further established that the plaintiffs were correct.

By contrast, the gummy product at issue in *this* case is baked from a dough, like a cookie, and is not delivered in a **fixed-size** device like the capsule in *Cohen* or the softgel in *Stonehart*. Piping Rock can use enough dough to make a gummy of whatever size is necessary to deliver the promised amount of magnesium derived from magnesium citrate, and not any other form of magnesium. Thus, Plaintiff and Lemberg Law neither possess nor have pleaded any valid basis to contend either that Piping Rock's Product lacks the promised quantity of magnesium or that the Product uses magnesium oxide rather than, or in addition to, magnesium citrate.

In this case, moreover, unlike in *Cohen* and *Stonehart*, Plaintiff's math depends on a warrantless assumption. Because Piping Rock's magnesium gummy is made from a dough, it contains carbohydrates (fiber and sugars) in addition to the magnesium compound. *See* SAC ¶ 9 (displaying the Product's SFP, which discloses the presence of "Dietary Fiber," "Total Sugars," and "Added Sugars" under the "Total Carbohydrates" header). The baked gummy is not at all like the single-ingredient capsule or softgel at issue in *Cohen* and *Stonehart*. Plaintiff and her counsel

did nothing more than assume the "Total Carbohydrate" weight of Piping Rock's Product, stated as "2g" on the SFP, was right on the nose, not rounded up to the nearest whole gram from a weight above 1.5 grams, as required by 21 C.F.R. § 101.9(c)(6).

Plaintiff's assertion in the SAC that "it is physically impossible to fit 330mg of magnesium as magnesium citrate in one serving of the [Product]" (Opp. at 1) is simply wrong if the carbohydrate weight in the gummy is rounded up to 2 grams from a smaller amount (as, in fact, it is). Yet, despite acknowledging that the applicable federal regulation requires Piping Rock to round the stated carbohydrate weight to the nearest whole gram on the Product's SFP, Plaintiff still falsely claims in her brief that the Product's SFP "disclose[s] *precisely* how much . . . carbohydrates are allegedly contained within [it]." Opp. at 13 (emphasis added). Plaintiff thus breezily ignores that it is the regulation-mandated *absence* of precision in the SFP, which requires use of whole numbers only, that renders Plaintiff's claim implausible.[1]

Plaintiff's reliance on an assumption about the carbohydrate weight in the Product, and her failure to acknowledge the difference between a fixed-size softgel or capsule versus the flexible

[1] In *Pearson v. Gesner*, 125 F.4th 400 (2d Cir. 2025), cited in Plaintiff's brief (at 9), defendant prison guards submitted video surveillance evidence with their motion to dismiss excessive force claims from an inmate. The Second Circuit held that because plaintiff had not referenced the video in his complaint, the district court should not have relied on it in granting the guards' Rule 12(b)(6) motion. *See id.* at 407. Here, Piping Rock has not submitted materials outside the complaint for purposes of its Rule 12(b)(6) motion. Nor is this a case like *Elias v. Rolling Stone LLC*, 872 F.3d 97 (2d Cir. 2017), where the parties in a defamation case offered differing interpretations about whether a published article referred to the plaintiff or someone else. Piping Rock has merely pointed out—and Plaintiff does not dispute—that (1) a federal regulation required Piping Rock to disclose the carbohydrate weight of a gummy as a whole number, and (2) Plaintiff's claim rests on an untested, unwarranted assumption that the carbohydrate weight of the Product was not rounded up from between 1.5 grams and 1.82 grams. Plaintiff cites no precedent, and none exists, for the premise that this Court must treat a mere assumption as true for purposes of a Rule 12(b)(6) motion. To the contrary, "[c]ourts have consistently held that mere speculation is insufficient to withstand a motion to dismiss." *MECO Elec. Co. v. Siemens Industry, Inc.*, 2022 WL 4085832, at *8 (S.D.N.Y. Sept. 6, 2022); *see also, e.g.*, *Jones v. Brookhaven Science Assocs. LLC*, 2024 WL 4145777 (E.D.N.Y. Sept. 10, 2024).

size and weight of a baked gummy, distinguishes Plaintiff's claims from those in *Cohen* and *Stonehart*, and it is why Plaintiff had no business filing this case without having a laboratory test the product. Without irony, Plaintiff's brief notes that the exact, unrounded carbohydrate weight of a gummy is "not pled in the Complaint" (Opp. at 9), which is exactly the problem. Although Plaintiff asks the Court to send the case to discovery to determine "[w]hatever the true carbohydrate content of the [Product] may be" (*id.*), Plaintiff never needed discovery from Piping Rock to determine this. Plaintiff could have taken the off-the-shelf product and sent it to any reputable laboratory, which would have confirmed that the label is accurate and that Piping Rock's product delivers the promised amount of magnesium from magnesium citrate.

Plaintiff's only other response to her and her counsel's unjustified misreading of the Product's label, without accounting for the rounding mandated by 21 C.F.R. § 101.9(c)(6), is to argue that because the actual carbohydrate weight of a single gummy is less than two grams, the regulation does not permit Piping Rock to state the "Total Carbohydrate" weight of a *four-gummy* serving as "8g," or four times the rounded weight of a single gummy. *See* Opp. at 9-10 (claiming that "[t]he Regulation does not permit a manufacturer like Defendant to take the weight of a part of a serving (such as a gummy), round it to the nearest [whole], then multiply it by the number of gummies, thus multiplying impression [sic].") Plaintiff cites nothing to support this argument, and Piping Rock drafted its SFP in compliance with the Code of Federal Regulations.[2] Further, even

[2] 21 C.F.R. § 101.36(b)(2)(1) requires Piping Rock to declare the total carbohydrates by weight per serving. The serving size for a dietary supplement is expressed as *one* unit. *See id.* § 101.12, Table 2 (reference amount for dietary supplements is "1 unit, e.g., tablet, capsule, . . . etc."). The Product's SFP therefore adopts a two-column format "consistent with th[at] declaration of serving size." Here, one unit (one gummy) has just over 1.5g of carbohydrates. 21 C.F.R. § 101.36 requires that amount to be declared in accordance with 21 C.F.R. § 101.9(c)(6)—*i.e.*, "to the nearest gram," which for a single gummy is "2g." Because that is the mandated serving size reference amount for a one-gummy serving (*see* 21 CFR 101.12, Table 2), Piping Rock declares the carbohydrates in a four-gummy serving as "8g," or four times the regulation-mandated one-gummy serving.

if Plaintiff were correct (which she is not) that Piping Rock should have stated the carbohydrate weight for a 4-gummy serving as 6 grams rather than 8 grams, that is irrelevant to her claim, which concerns the quantity of magnesium in the Product, not the quantity of carbohydrates. Plaintiff does not allege, nor could she credibly allege, that she would not have purchased the Product or would have insisted on paying less for it had she known a four-gummy serving contains two total grams *fewer* carbohydrates than stated on the label.

As the Second Circuit wrote in *Evergreen East Cooperative v. Whole Foods Market, Inc.*, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023)—where a plaintiff alleged that the defendant mislabeled balsam fir trees at Christmastime as more desirable Fraser firs—pleading something "upon information and belief . . . will only make otherwise unsupported claims plausible when the facts are peculiarly within the possession or control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Here, the quantity of magnesium from magnesium citrate in a four-gummy serving of the Product is *not* a fact peculiarly within Piping Rock's control. Plaintiff or Lemberg Law can send the product for testing by an independent lab as readily as Piping Rock can. This is why the court in *Rivera v. S.C. Johnson & Son, Inc.*, No. 20 Civ. 3588, 2021 WL 4392300, at *1 (S.D.N.Y. Sept. 24, 2021), correctly held that where the challenged product is "widely available," it is "common" to require a plaintiff to send the product for testing before alleging it is mislabeled. Under the circumstances of this case, Plaintiff's failure to secure reputable lab testing, or plead equivalent evidence, renders the SAC implausible and subject to dismissal.

## II. Because Plaintiff Premised Her Claims on Nothing More Than An Unwarranted Assumption, Her Complaint Fails.

Without anything else to rely on, Plaintiff's opposition set up a strawman. Piping Rock's opening brief did not argue that "in all mislabeling cases a plaintiff must plead testing in order to

state a claim" (Opp. at 12). The applicable test is plausibility, and although it is *customary* for plaintiffs in Ms. Greene's shoes to plead laboratory testing, sometimes plaintiffs can clear the plausibility bar in other ways. An unwarranted **assumption** that the weight of an ingredient has not been rounded up in a manner specifically directed by federal regulations, however—which is the sole basis of Plaintiff's case—surely does not suffice to render a claim plausible.[3]

Piping Rock's and Plaintiff's briefs both discuss the same cases in which courts dismissed claims like Plaintiff's due to the absence of lab test support. *See* Opening Br. at 7-9; Opp. at 12-15. Those well-reasoned decisions speak for themselves. Plaintiff argues that "[n]one of [these] authorities address" a theory like Plaintiff's premised as it is on an assumption that the weight of an ingredient disclosed on an SFP is exact and unrounded. Opp. at 15. That is true, of course, but only because no prior plaintiff appears to have wasted a court's time with such a theory.

## III. Plaintiff's Fraudulent Concealment and Implied Warranty Claims Under Georgia Law Also Fail For Other Reasons.

Plaintiff's SAC fails in its entirety because Plaintiff failed to plead her claims plausibly, and the Court should dismiss all Plaintiff's causes of action with prejudice. Certain of Plaintiff's claims, however, also fail for other reasons.

### *A. Plaintiff Has Not Pleaded a Valid Claim for Fraudulent Concealment.*

Plaintiff's claim for fraudulent concealment pursuant to Georgia common law fails because such a claim only lies where the parties have a "confidential relationship" (obviously lacking here) or in other "particular circumstances." Piping Rock's opening brief (at 14-15) explained, through

[3] Plaintiff cites *Lozano v. Bowmar Nutrition LLC*, 2021 WL 4459660 (C.D. Cal. Aug. 19, 2021). *See* Opp. at 12. As Piping Rock discussed in its opening brief (at 9), the plaintiff in *Lozano* sent the challenged product for laboratory testing. The defendant quibbled about whether the lab's testing methodology met Food & Drug Administration standards, but the court held that the plaintiff's submission of test results cleared the plausibility hurdle. *See id.* at *5-6. Neither *Lozano* nor any other case Plaintiff has cited supports her assertion that her claim in this case—premised on an untested assumption—is plausible without support from lab analysis.

discussion of the recent *Francoforte v. Graco Children's Products, Inc.*, 2026 WL 582859 (N.D. Ga. Jan. 7, 2026), why Plaintiff cannot validly plead a claim for fraudulent concealment. In response, Plaintiff argued that she needs discovery from Piping Rock to better allege "the relationship between the parties." Opp. at 19. That, however, is absurd. Plaintiff already has pleaded that she purchased the Product not from Piping Rock directly, but from a third-party grocery store. *See* SAC ¶ 4. She neither had, nor alleges she had, any direct dealings with Piping Rock, and certainly needs no discovery from Piping Rock to confirm this.

Plaintiff cites *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484 (N.D. Ga. Feb. 10, 2022), as support for her contention that she needs discovery to establish if she had a relationship with Piping Rock. *See* Opp. at 18. *Monopoli*, however, does not support Plaintiff's position. That case concerned Mercedes' allegedly concealed knowledge of a defect in a safety feature. *See Monopoli*, 2022 WL 409484, at *1. The plaintiff adequately pleaded both the existence of the defect and Mercedes' knowledge of it. *See id.* at *8-10. Two of the four plaintiffs purchased vehicles directly from authorized dealerships while the other two purchased from allegedly unauthorized dealerships. *See id.* at *11. The court held that for purposes of applying *other states'* fraudulent concealment laws, the plaintiff was entitled to discovery into the relationship between Mercedes and those allegedly unaffiliated dealerships to determine whether the dealers had a duty to disclose the defect. *See id.* at *12. In Georgia, by contrast, "there is no duty to disclose when the parties are engaged in an arm's length negotiation." *Id.* at *11. Nothing in *Monopoli* suggests that Plaintiff here is entitled to discovery before the Court can determine she had no relationship with Piping Rock giving rise to a common law disclosure duty.

### *B. Plaintiff's Implied Warranty of Merchantability Claim Fails Due to the Absence of Privity Between Plaintiff and Piping Rock.*

Piping Rock demonstrated in its opening brief (at 16-17) that Plaintiff's claim for breach of the implied warranty of merchantability fails because she is not in privity with Piping Rock. Again, Plaintiff expressly pleads that she purchased the Product from a third-party retailer. *See* SAC ¶ 4. Plaintiff responded to this only with the non-sequitur that the court in *Stonehart* held "[a] lack of privity of contract between plaintiffs and a defendant is not dispositive of a duty to disclose under either New York or Utah law." Opp. at 18, *citing Stonehart*, 2026 WL 658887, at *3. Because Plaintiff had no answer to the privity requirement under *Georgia* law, the Court should dismiss Plaintiff's claim for breach of the implied warranty of merchantability.

## CONCLUSION

For the reasons stated above, and in Piping Rock's opening brief, the Court should dismiss Plaintiff's claims with prejudice.

Dated: New York, New York
April 24, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

By: ______________________

Jeffrey S. Jacobson
Jeffrey.Jacobson@faegredrinker.com
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
Tel.: 212 248 3140

*Attorneys for Defendant*
*Piping Rock Health Products, Inc.*

## WORD COUNT CERTIFICATION

I, **W. JOSHUA LATTIMORE**, of full age and an associate at the law firm Faegre Drinker Biddle & Reath LLP, attorneys for Defendant Piping Rock Health Products, Inc. in this action, hereby certify, pursuant to Local Civil Rule 7.1(c), that the foregoing Reply Memorandum in Support of Motion to Dismiss, exclusive of the caption, table of contents, table of authorities, and signature block, contains 3,100 words as counted by Microsoft Word and is in compliance with the word-count limitations of Local Civil Rule 7.1(c); and I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
April 24, 2026

By: W. Joshua Lattimore
W. Joshua Lattimore