**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andrea Greene, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>Piping Rock Health Products, Inc. d/b/a Natural Vitality,<br><br>Defendant. | Civil Action No.: 2:24-cv-08383-LGD |

**MEMORANDUM IN OPPOSITION TO MOTION FOR SANCTIONS**

**TABLE OF CONTENTS**


TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

BACKGROUND ........ 4

ARGUMENT ........ 11

I. Legal Standard ........ 11

a. *Rule 11* ........ 11

*b. 28 U.S.C. § 1927* ........ 13

II. Sanctions Are Not Warranted Under Rule 11 ........ 13

*a. The Factual Contentions in the Operative Second Amended Complaint Have Evidentiary Support* ........ 13

*b. The Claims and Legal Contentions in the SAC are Warranted by Existing Law* ........ 17

III. Sanctions Against Lemberg Law Are Not Warranted Under 28 U.S.C. § 1927 ........ 19

IV. Defendant's Counsel Should Be Sanctioned ........ 23

# TABLE OF AUTHORITIES

**Cases**

*Agee v. Paramount Communications Inc.,*
114 F.3d 395 (2d Cir. 1997) ........ 12

*Cohen v. Nutricost*,
747 F. Supp. 3d 467 (E.D.N.Y. 2024) ........ 2, 17

*Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
271 F.3d 374 (2d Cir. 2001) ........ 11, 13

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ........ 11, 16

*Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*,
2025 WL 3077598 (S.D.N.Y. Nov. 4, 2025) ........ 1, 11, 12

*Dunning v. Supergoop, LLC*,
2025 WL 34822 (S.D.N.Y. Jan. 6, 2025) ........ 17

*Galley v. ZOLL Medical Corporation*,
2019 WL 13193899 (N.D. Tex. May 21. 2019) ........ 4

*Gaminde v. Lang Pharma Nutrition, Inc.*,
2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ........ 17

*Goldman v. Barrett*,
825 F. App'x 35 (2d Cir. 2020) ........ 20

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012) ........ 11

*Jawbone, LLC v. Donohue*,
2002 WL 1424587 (S.D.N.Y. June 28, 2002) ........ 17

*Jobar Holding Corp. v. Halio*,
2025 WL 1512574 (2d Cir. May 28, 2025) ........ 12, 19

*Johnson v. Univ. of Rochester Med. Ctr.*,
642 F.3d 121 (2d Cir. 2011) ........ 22

*Kaplan v. Lebanese Canadian Bank, SAL*,
999 F.3d 842 (2d Cir. 2021) ........ 18

*Krauth v. Executive Telecard, Ltd.,*
870 F. Supp. 543, 549 (S.D.N.Y. 1994) ........ 12

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
2014 WL 199512 (S.D.N.Y. Jan. 17, 2014) ........ 2, 12, 16

*O'Brien v. Alexander,*
101 F.3d 1479 (2d Cir. 1996) ........ 11

*Perez v. Posse Comitatus*,
373 F.3d 321 (2d Cir. 2004) ... 11

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 71 (2d Cir. 2000) ... 3, 12, 19, 21

*Rossbach v. Montefiore Med. Ctr.*,
81 F.4th 124, 141 (2d Cir. 2023) ... 24

*Rivera v. S.C. Johnson & Son, Inc.*,
2021 WL 4392300 (S.D.N.Y. Sept. 4, 2021) ... 17, 18

*Safe-Strap Co., Inc. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003) ... 12, 16

*Sheehan v. Starbucks Corp.*,
2026 WL 746725 (2d Cir. Mar. 17, 2026) ... 11, 13, 14, 18

*Silverman v. Town of Riverhead*,
2008 WL 11449317 (E.D.N.Y. Sept. 11, 2008) ... 12, 16

*Stonehart v. Now Health Grp., Inc.*,
2026 WL 658887 (N.D. Ill. Mar. 9, 2026) ... 2, 18

*United States v. International Brotherhood of Teamsters*,
948 F.2d 1338 (2d Cir. 1991) ... 12

*Wiggins v. Unilever U.S., Inc.*,
684 F.Supp.3d 127 (S.D.N.Y. 2023) ... 17

**Statutes**

28 U.S.C. § 1927 ... 3, 12, 23

**Rules**

Fed. R. Civ. P. 11(b) ... 10

Fed. R. Civ. P. 11(b)(2) ... 17

Fed. R. Civ. P. 11(b)(3) ... 2, 13, 15

Fed. R. Civ. P. 11(c) ... 11

**Regulations**

21 C.F.R. § 101.9(c)(6) ... 14, 16

Plaintiff, Andrea Greene ("Plaintiff"), by and through her undersigned counsel, respectfully submits this Memorandum of Law in Opposition to Defendant Piping Rock Health Products, Inc. d/b/a Natural Vitality's ("Defendant" or "Natural Vitality") Motion for Sanctions.

## INTRODUCTION

The Court should deny Defendant's Motion for Sanctions because neither Plaintiff nor her counsel, Lemberg Law, have engaged in any conduct that is remotely sanctionable. As a threshold matter, Defendant's motion twists the nature of Plaintiff's claims. This case is not merely about whether Defendant's "CALM GUMMIES Magnesium Supplement" (the "Supplements") contain a sufficient quantity of elemental magnesium — it is about whether that magnesium is derived from the specific source identified on the label: magnesium citrate. Magnesium derived from magnesium citrate is a bioavailable muscle relaxant that consumers specifically seek out and pay a premium for. Magnesium derived from magnesium oxide — a cheaper alternative — acts primarily as a laxative and is substantially less bioavailable. Plaintiff's counsel communicated this distinction to Defendant's counsel in writing on February 26, 2026 — the same day Defendant served its initial draft sanctions motion — and confirmed that the source issue had been discussed at length with prior counsel. Defendant's counsel did not deny this. Yet Defendant's sanctions motion addresses source identification only as an afterthought, and its initial round of Eurofins testing did not even test for the source of magnesium. A sanctions motion that ignores the central theory of the case it purports to challenge cannot establish that Plaintiff's claims lack evidentiary support. As another threshold matter, this case concerns Defendant's products prior to the transaction in which Piping Rock, the Defendant here, bought the product lines in October 2024.[1]

And the bases for the motion fail. First, Defendant argues that Rule 11 sanctions are

[1] https://www.newhope.com/press-releases/piping-rock-health-products-announces-acquisition-of-four-esteemed-wellness-brands-press-release (last visited Apr. 29, 2026).

warranted because Lemberg Law purportedly did not conduct laboratory testing on the Supplements before filing suit. Defendant's contention is false: as set forth in the accompanying Declaration of Sergei Lemberg ("Lemberg Decl."), counsel had the Supplements tested before filing suit as part of its own investigation. (Lemberg Decl. ¶ 4).

Second, Defendant argues that Rule 11 sanctions are warranted because Plaintiff alleges there was 8 grams of carbohydrates in one 4-gummy serving of the Supplements, which is exactly what the label on the Supplements states. Defendant contends the factual allegation is incorrect because the label was wrong, but the standard under Rule 11 is not whether the allegation is ultimately proven to be true; it is whether counsel justifiably believed, after a reasonable inquiry, that a factual contention has "evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Here, because counsel relied upon Defendant's own representations on the Supplements' label when alleging the Supplements' carbohydrate content, there was evidentiary support for the allegation.

Third, Defendant repeats the same novel argument it made in its pending Motion to Dismiss that Plaintiff was purportedly required to plead the results of laboratory testing in her Complaint to state a claim for relief for false labeling. However, "it is 'improper for a party to file a Rule 11 motion for the purpose of emphasizing the merits of the party's position.'" *Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*, 2025 WL 3077598, at *2 (S.D.N.Y. Nov. 4, 2025) (citing *Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *1 (S.D.N.Y. Jan. 17, 2014)). Moreover, Defendant's legal argument is simply wrong: as Plaintiff noted in her Opposition to Motion to Dismiss and below, Defendant fails to point to any authority requiring the pleading of testing in all cases. Indeed, courts have denied defendants' motions to dismiss and allowed the plaintiffs' claims to

proceed in similar magnesium supplement cases where no testing was alleged (and where Lemberg Law served as counsel). *See Cohen v. Nutricost*, 747 F. Supp. 3d 467, 471-72, 480-86 (E.D.N.Y. 2024); *Stonehart v. Now Health Grp., Inc.,* 2026 WL 658887, at *2 (N.D. Ill. Mar. 9, 2026).

Fourth, sanctions are not warranted under 28 U.S.C. § 1927 because Defendant fails to provide any evidence that Plaintiff's claims were "entirely meritless" or that Lemberg Law acted for "improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000). According to Defendant, Lemberg Law should be sanctioned because it did not agree to immediately dismiss this lawsuit the moment Defendant produced certain cherry-picked documents of unknown provenance[2] to Plaintiff (while Defendant withholds the vast majority of the discovery Plaintiff seeks from Defendant). However, because Defendant rushed to this Court to seek sanctions while refusing to engage in discovery, Plaintiff has not been provided an opportunity to conduct any discovery on Defendant's scant, self-serving and contradictory document production, e.g., Plaintiff has not been able to depose Defendant, the testing laboratory, or the manufacture of the Supplements concerning the contents or veracity of the testing reports or formula specifications produced by Defendant.

Thus, while Defendant contends the documents it has produced to Plaintiff support its position that the Supplements were not mislabeled, Plaintiff disagrees, her counsel has not had an opportunity to test Defendant's assertions via discovery, and Lemberg Law possesses separate testing which is consistent with Plaintiff's claim that the Supplements were mislabeled. Given the Parties' remaining disagreement over whether the Supplements were mislabeled and the outstanding discovery concerning the same, there is no basis for Plaintiff to dismiss her claims let alone any showing by Defendant that Lemberg Law has acted with any improper purpose. Thus,

[2] Indeed, the documents Defendant has produced to Plaintiff in this case appear come from a company called "Better Health" however all metadata has been stripped from the files.

sanctions should be denied under 28 U.S.C. § 1927.

Finally, because Defendant's Motion for Sanctions is meritless, knowingly based on a false premise (that Lemberg Law did not test the Supplements even though they did), and improperly repeats the same arguments it made in its Motion to Dismiss, Defendant's counsel has multiplied the proceedings in this case unreasonably and vexatiously and should be required under 28 U.S.C. § 1927 to pay Plaintiff's reasonable attorney's fees and costs incurred opposing the Motion for Sanctions.

## BACKGROUND

### *A. Pre-suit inquiry into Plaintiff's claims*

In 2024, as part of its investigation, Lemberg Law, through a consulting expert, sent a sample of the Calm Supplements purchased on Amazon for testing. Lemberg Decl. ¶ 4. In addition, Lemberg Law analyzed the Supplements' label, weighed the Supplements, and researched the chemistry of magnesium citrate, including how much elemental magnesium is contained within each known form of that compound. *Id.* ¶ 5. *See e.g., Galley v. ZOLL Medical Corporation*, 2019 WL 13193899, at *4 (N.D. Tex. May 21. 2019) (collecting cases holding that pre-litigation testing and consulting expert's facts and opinions are not discoverable)

Critically, this case is not merely about the quantity of magnesium in the Supplements — as pled it is about the source. This distinction was communicated to Defendant's counsel many times, including on February 26, 2026, and was also discussed at length with prior counsel. *Id.* ¶ 10. Lemberg Law filed the Complaint on December 6, 2024 (Dkt. No. 1), relying on the label representations as a reasonable consumer would, consistent with its approach in similar cases that survived dismissal, including a case in this very District. *See Cohen*, 747 F. Supp. 3d 467. On or about March 25-26, 2025, Plaintiff's counsel had the Supplements tested a second time. Lemberg

Decl. ¶ 6.

Plaintiff filed the operative Second Amended Complaint on June 5, 2025. Dkt. No. 15. The claim in the Second Amended Complaint, like the first, was not based on testing but rather the falsity apparent on the face of the label. The point of the counsel's independent testing was to ensure that the Plaintiff was not barking up the wrong tree, so to speak. Those tests, both pre-suit and post, were part of Plaintiff's counsel's own investigation and were not the basis of the complaint which is based, again, on the falsity of the supplement labels on their face.

***B. Defendant's Document Productions and Plaintiff's Responses***

On January 15, 2026, Plaintiff served her first set of interrogatories and requests for production. Lemberg Decl. ¶ 7. Rather than respond substantively to those requests, Defendant chose to use the production of cherry-picked documents as a substitute for discovery compliance, while simultaneously threatening sanctions. The following describes each of Defendant's productions, the deficiencies Plaintiff identified in each, and Defendant's failure to cure those deficiencies.

February 13, 2026 — First Eurofins Finished Product Test. Defendant produced Eurofins Test Report No. 202602014 (dated February 11, 2026), reporting testing of three lots of Calm Gummies for magnesium content. The three samples tested showed 345, 350, and 351 mg of magnesium per serving respectively — numbers consistent with the label claim. Simultaneously, Defendant threatened to file a Rule 11 sanctions motion if Plaintiff did not dismiss the case. Lemberg Decl. ¶ 8. This production was deficient for multiple independent reasons. First and most significantly, the testing did not identify the source of the magnesium, i.e., whether it was derived from magnesium citrate, magnesium oxide, or any other compound. Plaintiff's counsel promptly advised Defendant's counsel in writing on February 26, 2026, that the complaint's core claim is

about the source of magnesium, not its quantity, noting that this had been discussed "at length" and that Defendant conspicuously "didn't ask Eurofins to test for the source of Magnesium in the gummies." Lemberg Decl. ¶ 10. Defendant's counsel did not deny these assertions. Second, the three tested samples showed dramatically inconsistent unit weights: 2.4292g, 2.6213g, and 2.6315g per gummy — a range that exceeds 8% variation and raises serious questions about whether the samples were representative of the product as sold to consumers. *Id.* ¶ 8. Third, Plaintiff had no opportunity to verify chain of custody, sample selection methodology, or whether the tested product was purchased off the shelf or provided directly by Defendant to the lab. And, finally, this test has no import on what chemicals Defendant's predecessor in interest used at the time of the relevant events in this case – and Defendant has steadfastly refused to produce the records bearing on that issue.

February 26, 2026 — Unsigned Draft Sanctions Motion. Defendant served an unsigned and undated "draft" Rule 11 motion for sanctions (Lemberg Decl. ¶ 9), while simultaneously seeking to stay all discovery. (Dkt. No. 35). That request was denied on March 5, 2026. Plaintiff's counsel responded on February 26, 2026, putting Defendant on notice that (1) the sanctions motion was frivolous; (2) the core claim is about the source of magnesium, not its quantity; (3) Defendant's first Eurofins test was deficient because it did not test for source; and (4) Defendant would be held responsible for multiplying proceedings vexatiously. Lemberg Decl. ¶ 10.

March 12, 2026 — Raw Ingredient Certificates of Analysis. Defendant produced four Eurofins Certificates of Analysis (Report Nos. 5282220-0, 5282221-0, 5282222-0, and 5282223-0, each dated March 10, 2026) purporting to test raw magnesium citrate compound from Defendant's inventory. These certificates confirmed the presence of magnesium and citrate in the raw ingredient, with assay results of 15.4% to 15.7% elemental magnesium on a dried basis.

Lemberg Decl. ¶ 11. This production was deficient for multiple reasons, as stated by Plaintiff's counsel in response. First, these certificates tested raw ingredient samples that Defendant ***itself selected*** and sent to the lab — not finished gummies as sold to consumers. There is no chain of custody linking these raw ingredient lots to the specific batches used to manufacture the gummies purchased by Plaintiff in June 2024. Second, the certificates confirmed only that the raw ingredient Defendant chose to send to Eurofins was magnesium citrate — they said nothing about what compound was actually used in the finished product at the time of the relevant events, which is what the label must accurately reflect. Third, the assay results of 15.4% to 15.7% magnesium on a dried basis are inconsistent with the formula's stated 11.20% potency for ingredient 6152, suggesting the raw ingredient tested in March 2026 may not be the same compound used to manufacture the products at issue in the case.

March 13, 2026 — First Formula Specification (Post-Class-Period). Defendant produced a Formula Specification dated August 12, 2025 — more than a year after Plaintiff purchased the Supplements in June 2024, and after this lawsuit was filed. Lemberg Decl. ¶ 12. The formula identified the magnesium ingredient as Trimagnesium Citrate Hydrate (ingredient code 6629) at a weight of 751.3 mg per gummy, and claimed a yield of 82.5 mg of elemental magnesium per gummy. *Id.* Plaintiff's counsel responded in writing on March 13, 2026 and March 27, 2026, identifying multiple deficiencies. First, the formula postdated the class period and therefore could not establish what was in the product as sold to Plaintiff. Second, the formula's claimed yield of 82.5 mg from 751.3 mg implies an effective yield of only 10.98% — a figure chemically inconsistent with Trimagnesium Citrate Hydrate, which should yield approximately 16.1% on a dry basis. Third, the formula was produced in a format that could not be independently verified as to its creation date, modification history, or authenticity, and Plaintiff requested production in

native format with original metadata. *Id.* ¶¶ 13, 18. It is unknown whether the formula came from Piping Rock, Clorox or some other third party.

March 16, 2026 — Second Formula Specification with Revision History (PIPROC_003-004). After Plaintiff pointed out that the August 2025 formula postdated the class period, Defendant produced a second formula specification with a revision history. Lemberg Decl. ¶ 14. This document was materially different from the first and directly contradicted Defendant's representation that the formula had been consistent since 2019. *Id.* The revision history showed that on March 25, 2024 — squarely within the class period — the formula was **materially reworked**: ingredient 6152 was replaced with ingredient 6629, Certicoat (ingredient 6322) was removed, the deposit weight was corrected to 2.6 grams (with the prior weight acknowledged to be incorrect), the serving size reference was changed from 3 gummies to 4, and magnesium testing was removed from the specification entirely. *Id.* Defendant also served its discovery responses on this date, which were incomplete and non-responsive. *Id.* ¶¶ 15, 17.

Plaintiff responded on March 23, 2026, requesting: (1) all formula specifications in native format with original metadata for all revision numbers, including Revision 06 which is squarely at issue in the case but was conspicuously omitted; (2) document SRS-CRF-2024-9451, referenced in the March 2024 revision as the basis for the formula rework; (3) all documents and communications concerning the formula rework; and (4) documents identifying the manufacturers of ingredients 6152 and 6629. None of these requests have been satisfied to date. *Id.* ¶ 17.

March 19-23, 2026 — Second Draft Sanctions Motion. Between March 19 and March 23, 2026, Defendant served another draft Rule 11 sanctions motion — again unsigned and undated. Lemberg Decl. ¶ 16. On March 27, 2026, Defendant served its Motion to Dismiss pursuant to Rule 12(b)(6). Dkt. No. 40. Plaintiff responded to the sanctions threat in a detailed letter dated

March 27, 2026, which identified the formula inconsistencies, the rounding regulation argument, the unit weight discrepancy, and the failure to test for source. Lemberg Decl. ¶ 18.

April 2, 2026 — Plaintiff's Follow-Up on Outstanding Discovery. Plaintiff's counsel followed up by email on April 2, 2026, specifically requesting the outstanding documents identified in the March 23 email. This follow-up went unanswered. Lemberg Decl. ¶ 19. Defendant's pattern of ignoring discovery requests while simultaneously pressing sanctions is directly relevant to the Court's assessment of which party has acted in bad faith in these proceedings.

April 6, 2026 — Third Formula (New and Different). Defendant's counsel sent a letter on April 6, 2026, which for the first time introduced a moisture adjustment theory to explain the formula's implied yield discrepancy identified by Plaintiff's counsel, and attached a third formula — yet **again** materially different from the prior two. Lemberg Decl. ¶ 20. This formula used ingredient code 6152 (not 6629) for magnesium citrate, and included Certicoat (6322) — the ingredient that was removed in the March 2024 revision. *Id.* It therefore reflects the pre-March 2024 formulation, not the post-revision product. This third formula raised new and independent problems. *Id.* First, ingredient 6152 is listed at a potency of 11.20% as a flat as-is figure — with no dried basis notation or moisture adjustment — directly contradicting Defendant's claim that 6152 and 6629 are the same compound from different suppliers. Obviously, if they were the same compound, the potency documentation should be identical. The 11.20% figure is consistent with the 1:1 anhydrous form of magnesium citrate, not Trimagnesium Citrate Hydrate. Second, the total weight of all ingredients in this formula sums to approximately 3.36 grams per gummy — nearly a full gram more than the finished gummy weights of 2.43-2.63 grams shown in Defendant's own Eurofins testing. Defendant has never explained this discrepancy. Third, the moisture adjustment

theory introduced in the April 6 letter — that Trimagnesium Citrate Hydrate loses 25.6% of its weight to bound water, reducing its effective magnesium yield from approximately 16.1% to approximately 11.45% as-is — appeared nowhere in any prior formula, Eurofins report, or correspondence. It was introduced for the first time in counsel's letter, after months of litigation and discovery stonewalling, suggesting it is a litigation-driven *post-hoc* rationalization rather than a documented manufacturing practice. Plaintiff responded in detail on April 9, 2026, identifying each of these deficiencies. *Id.* ¶ 21.

April 15-16, 2026 — Signed Sanctions Motion; Plaintiff's Final Response. On April 15, 2026, Defendant served the signed and dated sanctions motion pursuant to the Court's bundling rule. *Id.* ¶ 22. On April 16, 2026, Plaintiff's counsel sent two detailed emails to Defendant's counsel, reiterating that (1) the core claim concerns the source of magnesium, not quantity — a point Defendant's sanctions motion almost entirely ignores; and (2) Defendant's Eurofins testing of raw magnesium citrate compound was not dispositive because the documents show the compound actually used in the finished gummy may be different from what was tested. *Id.* ¶ 23.

On April 17, 2026, Plaintiff served her Opposition to the Motion to Dismiss. (Dkt. No. 41). To date, despite repeated requests, Defendant has refused to produce the formula specifications for all revision numbers, the SRS-CRF-2024-9451 change request, the documents concerning the formula rework, or documents identifying the manufacturers of ingredients 6152 and 6629. Plaintiff has also not had an opportunity to depose any Defendant personnel, the Eurofins testing personnel, or representatives of the predecessor company that owned the product line during most of the class period.

## ARGUMENT

### I. Legal Standard

#### a. *Rule 11*

Rule 11(b) requires that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b). Rule 11(c), in turn, provides that if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

Thus, "[s]anctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) (citing Fed. R. Civ. P. 11(b)-(c)). Indeed, "even when a district court finds a violation of Rule 11, '[t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Id.* (citing *Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir. 2004)). And when applying Rule 11, it "'must be read in light of concerns that it will . . . chill vigorous advocacy,' and the analysis turns on 'whether the attorney has abused the judicial

process.'" *Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*, 2025 WL 3077598, at *1 (S.D.N.Y. Nov. 4, 2025) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

To be sanctionable under Rule 11, factual allegations must be "baseless, utterly lacking in support or otherwise frivolous." *Cypress Holdings, III, L.P.*, 2025 WL 3077598, at *2 (citing *Ipcon Collections LLC*, 698 F.3d at 63); *see also Sheehan v. Starbucks Corp.*, 2026 WL 746725, at *3 (2d Cir. Mar. 17, 2026) ("sanctions may not be imposed unless a particular allegation is utterly lacking in support.') (internal citations and quotation marks omitted)). Additionally, Rule 11(b) "makes clear . . . that a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (citing *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir. 1996) (a sanction under Rule 11(b) may not be imposed for failure to make reasonable inquiry "unless a particular allegation is utterly lacking in support")).

Further, it is "improper" to file a Rule 11 motion to "'emphasiz[e] the merits of the party's position.'" *Cypress Holdings, III, L.P*, 2025 WL 3077598, at *2 (citing *Lee*, 2014 WL 199512, at *1). Thus, "Rule 11 'should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment.'" *Id.* (citing *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003)). The Advisory Committee Notes for Rule 11 explain that "Rule 11 motions...should not be employed...to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Fed. R. Civ. P. 11 advisory committee's note (1993 Amendments) *See also Silverman v. Town of Riverhead,* 2008 WL 11449317, at *6 (E.D.N.Y. Sept. 11, 2008); *Krauth v. Executive Telecard, Ltd.,* 870 F. Supp. 543, 549 (S.D.N.Y. 1994).

***b. 28 U.S.C. § 1927***

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." To impose sanctions under § 1927, "'the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'" *Revson*, 221 F.3d at 79 (citing *Agee v. Paramount Communications Inc.,* 114 F.3d 395, 398 (2d Cir. 1997)). "'"Bad faith is the touchstone of an award under this statute.'" *Id.* (quoting *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1345 (2d Cir. 1991)). Thus, § 1927 "requires a clear showing of bad faith" and is "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Jobar Holding Corp. v. Halio*, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025) (internal citations and quotation marks omitted).

**II. Sanctions Are Not Warranted Under Rule 11**

***a. The Factual Contentions in the Operative Second Amended Complaint Have Evidentiary Support***

As set forth above, prior to filing suit Lemberg Law (1) had the Supplements tested at a laboratory, the results of which were consistent with Plaintiff's claims that the Supplements were mislabeled; (2) investigated the Supplements' labeling, weight, and the magnesium content in magnesium citrate; and (3) consulted with a non-testifying expert to verify Plaintiff's allegations that the Supplements were mislabeled. Lemberg Decl. ¶¶ 4-5. Taken together, Lemberg Law's pre-suit investigation satisfied Rule 11's requirement that "to the best of [Lemberg's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions [in the Complaint] have evidentiary support or, if specifically so identified, will likely

have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). *See Sheehan v. Starbucks Corp.*, 2026 WL 746725, at *3.

Nonetheless, Defendant insists – even though it knows full well this is not true – that Plaintiff and Lemberg Law violated Rule 11(b)(3) because, according to Defendant, "Lemberg fail[ed] to engage a reputable laboratory to confirm Greene's core, substantive allegation as part of a reasonable pre-litigation inquiry." Mot. at pp. 1, 11-12, 16. First, there is no requirement to do pre-suit laboratory testing where no reliance is placed it in the case; the test is whether the claims have evidentiary or legal support. Second, Defendant is simply wrong as the Supplements were tested before Plaintiff filed suit (Lemberg Decl. ¶ 4). Thus, even if there were a requirement to do pre-suit lab testing on a supplement, Plaintiff's counsel did it. Third, plaintiff is "not required to 'plead evidence' in the form of studies or reports as long as the underlying allegations in the complaint were not entirely devoid of support" and "'a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim.'" *Sheehan,* 2026 WL 746725, at *3 (citing *Com. Cleaning Servs., L.L.C.*, 271 F.3d at 386). Plaintiff did not need to allege or rely on testing in her complaint here because the representations on the face of the supplements themselves are the basis of the claim. In short, the entire thrust of Defendant's request for Rule 11 sanctions – that Lemberg Law purportedly did not test the Supplements before filing suit – is incorrect factually, creates a heightened pleading standard from whole cloth, and should be summarily rejected.

The Court should also reject Defendant's contention that Lemberg Law should be sanctioned because the SAC alleges that the Supplements' label states that one 4-gummy adult serving of the Supplements contains 8 grams of carbohydrates and relies upon the same when alleging the Supplements are mislabeled. *See* Mot. at pp. 1-2, 4, 7, 11; SAC ¶¶ 9, 15. There is

nothing sanctionable here because there was "evidentiary support" for the allegation that there are 8 grams carbohydrates in one serving of the Supplements: Defendant's own label on the Supplements explicitly states this is the carbohydrate content. SAC ¶¶ 9, 15.

Nonetheless, Defendant contends that in actuality "the carbohydrate weight of a gummy is approximately 1,543 milligrams, which the regulation required Piping Rock to round up to two grams on the label." Mot. at p. 1. In essence, Defendant's misplaced and absurd argument is that counsel should have known that the label has an arithmetical error. As argued in the Opposition to the Motion to Dismiss, under the governing regulations, where a supplement label states the "Total carbohydrate" content, the label must include "[a] statement of the number of grams of *total carbohydrate in a serving* expressed to the nearest gram . . . ." 21 C.F.R. § 101.9(c)(6) (emphasis supplied). Accordingly, a correct application of the regulation would be to calculate total carbohydrates for one four-gummy serving — 4 x 1.54g = 6.16g — and round that figure to the nearest gram, yielding 6 grams of carbohydrates per serving on the label. Instead, Piping Rock appears to have rounded the per-gummy figure first (1.54g → 2g) and then multiplied by four, producing 8 grams per serving on the label. That methodology has no basis in the regulation and the resulting label overstates carbohydrates by approximately 2 full grams per serving. Plain and simple, Greene's counsel could not have known of Defendant's failure to follow the law.

Nor can Piping Rock simultaneously argue that the 8 gram per serving figure on the label is a rounded-up approximation that should not be taken at face value, and that the label is otherwise accurate and Plaintiff's reliance on it was unreasonable. Plaintiff relied on the label exactly as a reasonable consumer would. If the label overstates carbohydrates due to Piping Rock's irregular rounding and poor arithmetic methodology — one that has no basis in the applicable federal regulation — that is a problem of Piping Rock's own making, and it raises additional questions

about the accuracy of the label that further support rather than undermine the SAC's allegations.

Regardless, the relevant inquiry under Rule 11 is not whether Plaintiff's allegation that one serving of the Supplements contains 8 grams of carbohydrates is ultimately proven to be correct[3]; it is whether "to the best of [counsel's] knowledge, information, and belief," after a reasonable inquiry, the factual contentions in a pleading "*have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*." Fed. R. Civ. P. 11(b)(3) (emphasis supplied). Here, because Plaintiff relied upon Defendant's own label when alleging the Supplements' carbohydrate content, there was evidentiary support and there is no sanctionable conduct under Rule 11(b)(3). Defendant's carbohydrate rounding argument also fails for a more fundamental reason: it was impossible for Plaintiff's counsel to know about it pre-filing. Defendant's claimed rounding methodology — rounding individual gummy carbohydrate weights to the nearest gram before multiplying by four, rather than rounding the total serving weight as the regulation requires — is not disclosed anywhere on the label, in any publicly available document, or in any regulatory filing. It is an internal manufacturing assumption that existed, if at all, only within Defendant's own files. Rule 11 evaluates the reasonableness of an attorney's pre-filing inquiry based on information reasonably available at the time of filing. *See Cooter*, 496 U.S. at 401 (pre-filing inquiry assessed based on "all the circumstances of a case," including information available to counsel). A plaintiff's counsel cannot be sanctioned for failing to anticipate an undisclosed internal rounding methodology that no amount of pre-suit diligence could have uncovered. Defendant's own label said 8 grams of carbohydrates per serving. Plaintiff's counsel read the label and relied on it. That is precisely what

[3] In fact, "a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001) (citing *O'Brien v. Alexander,* 101 F.3d 1479, 1489 (2d Cir. 1996)).

a reasonable attorney — and a reasonable consumer — would do. The suggestion that counsel should have independently hypothesized that Defendant was applying a non-regulatory rounding methodology that inflated the stated carbohydrate content by two grams per serving borders on the absurd. Moreover, Defendant's rounding explanation itself violates 21 C.F.R. § 101.9(c)(6), which requires rounding of the total carbohydrate weight per serving, not per unit. Defendant cannot seek sanctions based on conduct that was itself reasonable, in reliance on a label that Defendant mislabeled through its own non-compliant arithmetic.

***b. The Claims and Legal Contentions in the SAC are Warranted by Existing Law***

"It is improper for a party to file a Rule 11 motion for the purpose of emphasizing the merits of the party's position." *Lee*, 2014 WL 199512, at *1. Thus, "'Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss, a motion for a more definite statement, or a motion for summary judgment.'" *Safe-Strap Co.*, 270 F. Supp. 2d at 416 (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1336 (2d ed. Supp. 2003)); *see also Silverman v. Town of Riverhead*, 2008 WL 11449317, at *6 (E.D.N.Y. Sept. 11, 2008), *report and recommendation adopted,* 2008 WL 11450630 (E.D.N.Y. Sept. 29, 2008) (collecting cases for "the oft-cited principle that a Rule 11 sanctions motion may not properly substitute for a motion to dismiss or a summary judgment motion.").

Yet this is exactly what Defendant has done here in its Motion for Sanctions. Defendant repeats the same argument it made in its Motion to Dismiss – that in all false labeling cases a plaintiff purportedly must plead laboratory testing results to state a claim for relief – including citing and discussing the same authorities it cited in its Motion to Dismiss: *Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300, at *1 (S.D.N.Y. Sept. 4, 2021); *Wiggins v. Unilever U.S., Inc.*,

684 F.Supp.3d 127 (S.D.N.Y. 2023); *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *1 (N.D.N.Y. Mar. 25, 2019); and *Dunning v. Supergoop, LLC*, 2025 WL 34822, at *1 (S.D.N.Y. Jan. 6, 2025). *Compare* Mot. at pp. 17-20 *with* Dkt. No. 40-1 at pp. 7-13.

Defendant's attempts to repeat and bolster the arguments it already made in its pending Motion to Dismiss should be rejected on their face as an improper use of a Rule 11 motion. *See Jawbone, LLC v. Donohue*, 2002 WL 1424587, at *6 (S.D.N.Y. June 28, 2002) (denying motion for sanctions where "the arguments made by defendants in support of their Rule 11 motion are substantially identical to the arguments made by defendants in support of their motion to dismiss for failure to state a claim."). Moreover, Defendant is wrong that Plaintiff's claims are not "warranted by existing law." Fed. R. Civ. P. 11(b)(2). As Plaintiff noted in her Opposition to Defendant's Motion to Dismiss, none of Defendant's cited authorities hold that in all product labeling cases a plaintiff must allege testing; that is simply not the law. *See* Dkt. No. 41 at pp 12-15. Just the opposite, Lemberg Law has successfully pleaded and survived motions to dismiss in other false labeling cases involving magnesium supplements where, as here, the plaintiffs did not plead laboratory testing in their complaints. *See Cohen*, 747 F. Supp. 3d at 471-72, 480-86 (denying motion to dismiss breach of warranty and consumer protection claims where plaintiff similarly alleged defendant's magnesium supplement was mislabeled and false because it "is impossible to fit 420 mg of magnesium derived from magnesium glycinate in two of the size 00 capsules into which the Product is portioned."); *Stonehart,* 2026 WL 658887, at *2 (denying motion to dismiss breach of warranty, consumer protection and fraud claims where plaintiffs similarly "allege[d] it is 'impossible' for a three-capsule serving of NOW's Supplement to contain 2,018 milligrams of elemental magnesium from magnesium citrate, glycinate, and malate alone."). Additionally, one of Defendant's own authorities explained that the Court "does not mean to

suggest that a consumer-protection plaintiff will only be able to state a claim if he can retain an expert to conduct sophisticated chemical analysis before bringing suit" *Rivera*, 2021 WL 4392300, at *6.

Thus, while Defendant complains that Plaintiff's Complaint does not "allege[ ] that Greene or Lemberg possessed laboratory test results or expert opinion supporting their claims" (Mot. at p. 3), "existing law" does not require pleading laboratory testing and counsel "was not required to 'plead evidence' in the form of studies or reports as long as the underlying allegations in the complaint were not entirely devoid of support." *Sheehan*, 2026 WL 746725, at *3 (citing *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 860 (2d Cir. 2021)).

Accordingly, the Court should reject as contrary to law Defendant's assertion that "[g]iven the state of the law on this issue, Lemberg cannot be heard to say that the SAC as pleaded is 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law.'" Mot. at p. 20 (citing Fed. R. Civ. P. 11(b)(2)). In support, Defendant cites no controlling law. The law is that a claim must have reasonable factual and legal support. Regarding false-labeling claims, where the label itself shows the falsity, pre-suit testing can certainly be used to bolster the claim but there is no requirement to do so. *See Rivera*, 2021 WL 4392300, at *6. Here, Plaintiff's SAC was fully warranted by existing law.

## III. <u>Sanctions Against Lemberg Law Are Not Warranted Under 28 U.S.C. § 1927</u>

To impose sanctions on Lemberg Law under § 1927, this Court must find clear evidence that (1) Plaintiff's claims were entirely meritless and (2) Lemberg Law acted for improper purposes. As a threshold matter, the § 1927 motion is premature. Section 1927 sanctions require a finding that claims are "entirely meritless" — a finding that cannot be made where discovery is ongoing, where competing test results from independent laboratories are in direct conflict, and

where Defendant has withheld the very documents necessary to evaluate its own productions. Courts in this Circuit have consistently held that § 1927 sanctions are inappropriate where a colorable factual dispute remains. *See Jobar Holding Corp. v. Halio*, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025) (§ 1927 "requires a clear showing of bad faith" and is only "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose"). Here, Plaintiff's claims are supported by: (1) the label on the product at issue, which even on Defendant's best day has an arithmetic error Plaintiff could not have anticipated; (2) pre-suit and post-suit laboratory testing that is consistent with Plaintiff's allegations that the Supplements cannot deliver the promised magnesium from magnesium citrate; (3) Defendant's own formula documents showing a mid-class-period ingredient change, an acknowledged incorrect deposit weight, and removal of magnesium testing from the specification; and (4) a pattern of three successive, mutually contradicting formula productions. These facts collectively make it impossible to conclude that Plaintiff's claims are "entirely meritless" or that counsel acted in bad faith in declining to dismiss. *See Revson*, 221 F.3d at 79. Defendant falls far short of making such a showing here. Instead, Defendant asserts sanctions are warranted because Defendant produced certain cherry-picked documents which, it claims, "left Lemberg and his client without a colorable claim—certainly as long as Lemberg possesses no contrary test data." Mot. at pp. 20-21. Defendant's own concession is therefore dispositive: as set forth above and in the accompanying Lemberg Declaration, Plaintiff does possess contrary test data that is consistent with Plaintiff's claims.

Thus, there is a discrepancy between Plaintiff's independent test results and Defendant's commissioned results which is itself a material dispute of fact that forecloses any finding that Plaintiff's claims are "entirely meritless" or that Lemberg Law acted in bad faith. *See* Lemberg

Decl. ¶¶ 4, 6.

Moreover, the documents produced by Defendant have raised more questions than they answered yet Plaintiff has not had any opportunity to conduct discovery – from Defendant, the testing laboratory, or the actual manufacturer of the Supplements – concerning the testing and formula specifications produced by Defendant. Indeed, Defendant's post-suit productions are internally inconsistent and self-contradicting, and Plaintiff cannot be required to trust them. As set forth in the Background section above, Defendant has produced three materially different formula documents, each contradicting the prior. It has produced raw ingredient testing that does not address the finished product. It has introduced a moisture adjustment theory that appears nowhere in its own formula documents and was disclosed for the first time in a letter written to avoid sanctions. It has produced a revision history that directly refutes its representation that the formula has been consistent since 2019. And its own April 6, 2026 formula reveals a total ingredient weight of approximately 3.36 grams per gummy that Defendant has never reconciled with the finished gummy weights of 2.43-2.63 grams shown in its own Eurofins testing. The law does not require a plaintiff to simply accept a defendant's self-serving, post-litigation representations as dispositive. "A party may not avoid sanctions merely by producing documents and then insisting, without more, that those documents resolve the dispute." *See Goldman v. Barrett*, 825 F. App'x 35, 38-39 (2d Cir. 2020).

Here, Plaintiff has been denied deposition testimony from Defendant's formulator, quality personnel, and Eurofins laboratory personnel; has been denied native-format formula specifications with metadata; has been denied the change request document that ordered the March 2024 formula rework; has been denied identification of the manufacturers of the magnesium ingredients used during the class period; and has been denied access to formula specifications for

all revision numbers. A party that refuses to produce the documents necessary to verify its own productions cannot claim that those productions were so conclusive as to render continued litigation sanctionable. This principle is fundamental: the purpose of discovery is to allow parties to test each other's factual assertions through examination of documents, witnesses, and evidence. A defendant who produces a handful of self-selected documents while blocking all avenues of verification cannot complain when the plaintiff declines to treat those documents as conclusive. *See Revson*, 221 F.3d at 79 (bad faith requires showing claims were "entirely meritless"; a genuine evidentiary dispute precludes such a finding). The withheld documents here are not peripheral — they are the core materials that would allow Plaintiff to evaluate Defendant's productions: the formula revision change request, the native-format formula specifications with metadata, the manufacturer identifications for the magnesium ingredients, and the earlier revision numbers that were omitted entirely from production. Until Defendant produces these materials and Plaintiff has an opportunity to depose the relevant witnesses, no court can fairly conclude that the case is "entirely meritless."

Further, there is simply no comparison to be drawn between this case and *Johnson v. Univ. of Rochester Med. Ctr.*, where counsel repeatedly alleged the defendant "made an unsolicited, libelous statement about [plaintiff] . . . when, in fact, [*plaintiff's] attorney requested and authorized the release of the allegedly libelous statement*." *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 126 (2d Cir. 2011) (emphasis suppled).

Under the circumstances here where there remains a material dispute of fact concerning whether the Supplements were mislabeled, and given Defendant's utter failure to show that Lemberg Law has acted in bad faith or for an improper purpose in this case, the Court should deny Defendant's request for sanctions under 28 U.S.C. § 1927

## IV. Defendant's Counsel Should Be Sanctioned

This case involves a product the Defendant bought from a third party and a genuine dispute about its contents. Sanctions practice here initiated by Defendant is clearly a tactic to curb discovery, intimidate and impose costs, but it does not serve to advance the progress of the case even minimally. From the moment Defendant's current counsel appeared in this case, they have simultaneously served a succession of motions for sanctions on Plaintiff while refusing to allow Plaintiff to conduct discovery concerning her claims or Defendant's own documents. Indeed, even though this Court denied counsel's request to stay discovery, it has objected to **all** Plaintiff's discovery requests, unilaterally decided which documents it does and does not have to produce, and then wasted the Parties' and the Court's time with its frivolous Motion for Sanctions which is based on an incorrect premise (that counsel never tested the Supplements) and an improper repetition of its Motion to Dismiss. In so doing, Defendant multiplied the proceedings in this case "unreasonably and vexatiously" and thus should be ordered to pay for Plaintiff's attorney's fees incurred opposing the Motion for Sanctions.

Moreover, Defendant's counsel has made representations to Plaintiff that are directly contradicted by Defendant's own document productions. Specifically, counsel represented that ingredients 6152 and 6629 are the same compound — Trimagnesium Citrate — simply sourced from different suppliers. Yet the formula produced with counsel's April 6, 2026, letter lists ingredient 6152 at a potency of 11.20% as a flat as-is figure, while Trimagnesium Citrate Hydrate would require a moisture-adjusted calculation to arrive at its as-is yield, and 11.20% is consistent with the chemically distinct 1:1 anhydrous form of magnesium citrate. Counsel further represented that the formula has been consistent since 2019, yet the formula revision history produced as PIPROC_003-004 shows the formula was materially reworked during the class period, with the

magnesium ingredient changed, the deposit weight corrected, and magnesium testing removed from the specification entirely.

The filing of a sanctions motion premised on representations that Defendant's own documents contradict is itself the kind of conduct that warrants sanctions against Defendant's counsel under 28 U.S.C. § 1927 and under the Court's inherent authority. *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion for Sanctions in its entirety.

Dated: April 29, 2026

Respectfully submitted,

By: */s/ Sergei Lemberg*

Sergei Lemberg
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*

## CERTIFICATE OF WORD COUNT

I hereby certify, pursuant to Local Civil Rule 7.1(c), that the foregoing Opposition to Defendant's Motion for Sanctions exclusive of the caption, table of contents, table of authorities, and signature block, contains 7,482 words as counted by Microsoft Word and is in compliance with the word-count limitations of Local Civil Rule 7.1(c); and I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

By: */s/ Sergei Lemberg*
Sergei Lemberg