**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Andrea Greene, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>Piping Rock Health Products, Inc. d/b/a Natural Vitality,<br><br>Defendant. | : | Civil Action No.: 2:24-cv-08383-LGD |

**DECLARATION OF SERGEI LEMBERG**

I, Sergei Lemberg, under penalty of perjury under the laws of the United States of America, affirm and state as follows:

1. I am the principal of Lemberg Law, LLC ("Lemberg Law"). I am a consumer rights attorney experienced in prosecuting actions under various federal and state consumer protection statutes. I have personal knowledge as to all matters set forth in this Declaration and could testify to the same if called to do

2. I am counsel of the Plaintiff in this action.

3. In addition, I am also counsel to the plaintiffs in *Cohen v. eSupplements, LLC d/b/a Nutricost*, No. 2:23-cv-06387-NJC-AYS (E.D.N.Y.) and *Stonehart v. NOW Health Group, Inc.*, No. 1:24-cv-04436 (N.D. Ill.) In both cases the plaintiffs alleged the defendants sold mislabeled magnesium supplements. Like this case, the plaintiffs in Cohen and *Stonehart* did not allege the contents of laboratory testing in the respective pleadings. In both cases the defendants' motions to dismiss were denied. *See Cohen v. Nutricost*, 747 F. Supp. 3d 467 (E.D.N.Y. 2024); *Stonehart v. Now Health Grp., Inc.,* 2026 WL 658887 (N.D. Ill. Mar. 9, 2026).

4. In 2024, before Plaintiff retained Lemberg Law to represent her in this action, I sent a sample of the Calm Supplements purchased on Amazon to a laboratory for testing. The testing results I received were consistent with Plaintiff's claims that the Supplements are mislabeled.

5. In addition to testing the Supplements before filing suit on behalf of the Plaintiff, my pre-suit investigation involved, among other things, analyzing the claims on the Supplements' label, weighing multiple servings of the Supplements, and researching the chemistry of magnesium citrate, i.e., how much elemental magnesium is contained within magnesium citrate. I also consulted with a non-testifying expert to verify Plaintiff's allegations that the Supplements were mislabeled.

6. I subsequently had the Supplements tested by a laboratory again on or about March 25-26, 2025. The testing results I received were also consistent with Plaintiff's claims that the Supplements are mislabeled.

7. On January 15, 2026, Plaintiff served her First Set of Interrogatories and Requests for Production of Documents on Defendant.

8. On February 13, 2026, Defendant's counsel sent me an email containing a Eurofins Test Report No. 202602014 (dated February 11, 2026), and in the same email threatened to serve a Rule 11 motion for sanctions if the case was not dismissed. The Eurofins Test Report No. 202602014 (dated February 11, 2026), reported testing of three lots of Calm Gummies for magnesium content. The three samples tested showed 345, 350, and 351 mg of magnesium per serving respectively — numbers consistent with the label claim. In addition, the three tested samples showed dramatically inconsistent unit weights: 2.4292g, 2.6213g, and 2.6315g per gummy. However, the testing provided by Defendant did not identify the source of the claimed magnesium, i.e., whether the magnesium was derived from magnesium citrate or another type of magnesium.

9. On February 26, 2026, Defendant emailed me an unsigned and undated "draft" Rule 11 motion for sanctions.

10. On February 26, 2026, after receiving the draft sanctions motion, I emailed Defendant's counsel, that the complaint's core claim is about the source of magnesium, not its quantity, noting that this had been discussed previously, and that Defendant conspicuously "didn't ask Eurofins to test for the source of Magnesium in the gummies." In addition, I noted that the sanctions motion was frivolous, Defendant's first Eurofins test was deficient because it did not test for source, and Defendant would be held responsible for multiplying proceedings vexatiously.

11. On March 12, 2026, Defendant emailed me four Eurofins Certificates of Analysis (Report Nos. 5282220-0, 5282221-0, 5282222-0, and 5282223-0, each dated March 10, 2026) purporting to test raw magnesium citrate compound from Defendant's inventory. These certificates confirmed the presence of magnesium and citrate in the raw ingredient, with assay results of 15.4% to 15.7% elemental magnesium on a dried basis.

12. On March 13, 2026, Defendant emailed me a document purporting to be a "formula specification" for the Supplements dated August 12, 2025. The formula identified the magnesium ingredient as Trimagnesium Citrate Hydrate (ingredient code 6629) at a weight of 751.3 mg per gummy, and claimed a yield of 82.5 mg of elemental magnesium per gummy.

13. On March 13, 2026, I responded to Defendant's counsel noting that the formula was dated only a few months prior, i.e., they postdated the class period.

14. On March 16, 2026, Defendant emailed me Second Formula Specification with Revision History (PIPROC_003-004). The second formula specification was materially different from the first and directly contradicted Defendant's representation that the formula had been consistent since 2019. The revision history showed that on March 25, 2024 — squarely within the class period — the formula was materially reworked: ingredient 6152 was replaced with ingredient 6629, Certicoat (ingredient 6322) was removed, the deposit weight was corrected to 2.6 grams (with

the prior weight acknowledged to be incorrect), the serving size reference was changed from 3 gummies to 4, and magnesium testing was removed from the specification entirely

15. On March 16, 2026, Defendant served its Objections and Responses to Plaintiff's Interrogatories and Requests for the Production of Documents.

16. Between March 19, 2026 and March 23, 2026, Defendant emailed me a another "draft" undated and unsigned motion for sanctions under Rule 11.

17. On March 23, 2026, I emailed Defendant's counsel to request to meet and confer with Defendant concerning its discovery responses. In my email, I requested that Defendant produce additional outstanding discovery including (1) all formula specifications in native format with original metadata for all revision numbers, including Revision 06 which was omitted; (2) document SRS-CRF-2024-9451, referenced in the March 2024 revision as the basis for the formula rework; (3) all documents and communications concerning the formula rework; and (4) documents identifying the manufacturers of ingredients 6152 and 6629. Thereafter, I sent a series of additional emails to Defendant following up on my request to meet and confer and for the Defendant to produce the requested discovery. In response, Defendant did not produce the requested materials.

18. On March 27, 2026, I sent a letter to Defendant's counsel identifying multiple deficiencies in the documents produced by the Defendant. As to the first produced formula specification, I noted first that the formula postdated the class period and therefore could not establish what was in the product as sold to Plaintiff. Second, the formula's claimed yield of 82.5 mg from 751.3 mg implies an effective yield of only 10.98% — a figure chemically inconsistent with Trimagnesium Citrate Hydrate, which should yield approximately 16.1% on a dry basis. Third, the formula was produced in a format that could not be independently verified as to its creation date, modification history, or authenticity, and I requested production in native format with original metadata. In addition, I noted the inconsistencies with the second formula set forth above in

paragraph 14 of this declaration. I also responded to Defendant's rounding regulation argument and noted Defendant's failure to test for source.

19. On April 2, 2026, I sent a follow up email to Defendant's counsel specifically requesting the outstanding documents identified in my March 23 email. This follow-up went unanswered.

20. On April 6, 2026, Defendant's counsel sent a letter on April 6, 2026, which for the first time introduced a moisture adjustment theory to explain the formula's implied yield discrepancy, and attached a third formula — yet again materially different from the prior two. This formula used ingredient code 6152 (not 6629) for magnesium citrate, and included Certicoat (6322) — the ingredient that was removed in the March 2024 revision. It therefore reflects the pre-March 2024 formulation, not the post-revision product.

21. This third formula raised new and independent problems. First, ingredient 6152 is listed at a potency of 11.20% as a flat as-is figure — with no dried basis notation or moisture adjustment — directly contradicting Defendant's claim that 6152 and 6629 are the same compound from different suppliers. Obviously, if they were the same compound, the potency documentation should be identical. The 11.20% figure is consistent with the 1:1 anhydrous form of magnesium citrate, not Trimagnesium Citrate Hydrate. Second, the total weight of all ingredients in this formula sums to approximately 3.36 grams per gummy — nearly a full gram more than the finished gummy weights of 2.43-2.63 grams shown in Defendant's own Eurofins testing. Defendant has never explained this discrepancy. Third, the moisture adjustment theory introduced in the April 6 letter — that Trimagnesium Citrate Hydrate loses 25.6% of its weight to bound water, reducing its effective magnesium yield from approximately 16.1% to approximately 11.45% as-is — appeared nowhere in any prior formula, Eurofins report, or correspondence. On April 9, 2026, I sent an email to Defendant's counsel identifying the above deficiencies.

22. On April 15, 2026, Defendant served the signed and dated sanctions motion pursuant to the Court's bundling rule.

23. On April 16, 2026, I sent two detailed emails to Defendant's counsel, reiterating, among other issues, that (1) the core claim concerns the source of magnesium, not quantity — a point Defendant's sanctions motion almost entirely ignores; and (2) Defendant's Eurofins testing of raw magnesium citrate compound was not dispositive because the documents show the compound actually used in the finished gummy may be different from what was tested.

24. To date, despite repeated requests, Defendant has not produced the formula specifications for all revision numbers, the SRS-CRF-2024-9451 change request, the documents concerning the formula rework, or documents identifying the manufacturers of ingredients 6152 and 6629.

25. To date, Plaintiff has not had an opportunity to depose Defendants or third parties or otherwise take additional discovery about the contents of the few documents Defendant produced in this action. For instance, Plaintiff has not had an opportunity to verify the contents of the laboratory testing provided by Defendant including which products were tested, how they were tested, or the chain of custody between Defendant and the testing laboratory. Nor has Plaintiff had an opportunity to take discovery about the Supplements' formula specifications from Defendant, the manufacturer of the Supplements, or the predecessor company who owned the Supplements product line during the relevant time period.

Dated: April 29, 2026

*/s/ Sergei Lemberg*
Sergei Lemberg