faegredrinker.com

**Jeffrey S. Jacobson**
Partner
jeffrey.jacobson@faegredrinker.com
212-248-3191 direct

**Faegre Drinker Biddle & Reath LLP**
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
+1 212 248 3140 main
+1 212 248 3141 fax

June 5, 2026

**BY ECF**

Hon. Lee G. Dunst, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

*Greene v. Piping Rock Health Products, Inc.*, No. 2:24-cv-8383

Dear Judge Dunst:

We represent Defendant Piping Rock Health Products, Inc. ("Piping Rock") in this matter. We write jointly with Plaintiff Andrea Greene, pursuant to Rule IV.D.1 of Your Honor's Individual Rules, to request a conference to discuss, or authorization to file, Piping Rock's anticipated motion for an order sequencing and limiting discovery.

In accordance with Rule IV.C. of Your Honor's Individual Rules, the parties met and conferred regarding Piping Rock's anticipated motion. The undersigned counsel met via Microsoft Teams on June 5, 2026, and did not agree on the relief Piping Rock seeks. Their respective positions are below.

**Piping Rock's Position**

Ms. Greene alleges in this case that Piping Rock's "Natural Vitality Calm Gummies Magnesium Supplement" (the "Product") does not contain 330 milligrams of magnesium derived from magnesium citrate, as stated on the label. The only relevant issues in the case at present, therefore, are whether the Product does or does not contain the promised amount of magnesium and whether magnesium citrate is the sole source of that magnesium. Piping Rock has filed a motion to dismiss in which it argues that Ms. Greene did not plead a valid basis to believe the product is not as advertised. This Court, however, has ruled that the pendency of Piping Rock's motion is not a sufficient reason to stay discovery. Accordingly, Piping Rock has gone about the process of proving, **and now has conclusively proved, that the Product is as advertised**.

It is a standard practice for companies that manufacture nutritional supplements to retain samples of products produced at different times. Piping Rock provided Plaintiff's counsel with a list of dozens of retained samples of the Product manufactured at various times during the purported class period. By agreement, Plaintiff chose three retained samples, and Piping Rock sent those three samples to a leading independent laboratory, Eurofins, for testing. Eurofins tested the magnesium content of the three samples. Before doing so, Eurofins sent photos of the bottles to counsel for both sides to confirm that it received the samples Plaintiff's counsel chose.

Unsurprisingly to Piping Rock, **Eurofins confirmed that all three retained samples contained the promised quantity of magnesium**.

Eurofins advised the parties that although it can determine the quantity of magnesium in a finished product (like a baked gummy), its tests cannot differentiate among sources of magnesium. But Piping Rock also has produced to Plaintiff's counsel every version of the confidential formula for the Product dating back to the Product's inception in December 2018. For the Court's convenience, Piping Rock is submitting redacted versions of the formula with this letter. (Plaintiff has the documents without redactions.) The formula documents show unequivocally that (1) the sole source of magnesium in the Product has always been magnesium citrate, and (2) the Product has always contained the same quantity of magnesium citrate—a quantity sufficient to deliver the promised quantity of magnesium. Additionally, Piping Rock has identified to Plaintiff's counsel the suppliers from which it and its predecessor manufacturer of the Product obtained magnesium citrate and certificates of analysis from those suppliers demonstrating that the compound is indeed magnesium citrate. This evidence fully supports that magnesium citrate is the only source of magnesium in the Product.

**Plaintiff, by contrast, has produced nothing to support her contention that the now-undisputedly sufficient quantity of magnesium in the Product, confirmed by independent testing, comes from anything other than magnesium citrate.**

Below, Plaintiff makes much of the fact that one formula document Piping Rock produced contained what appears to be a typographical error in the magnesium citrate content. The Court can find that document at page 20 of the attached PDF. The error appears in an Excel spreadsheet, so it carried over to other cells that relied on the erroneous cell. Piping Rock did not create this document—it obtained the document from its predecessor manufacturer—so Piping Rock does not know the genesis of the error. But every other formula-related document dating back to 2018 displays the correct amount of magnesium citrate per gummy (751.3mg), enough for each gummy to contain 82.5mg of magnesium. The formula documents recite every change made to the formula, and there is no reference to any change in the quantity of magnesium citrate, ever. And, critically, the retained samples Eurofins just tested—samples Plaintiff's counsel specifically chose—were from the same time period as the erroneous formula document, and Eurofins' testing confirmed that the tested gummies contained the promised amount of magnesium. Accordingly, the one erroneous document cannot be a basis for Plaintiff to demand more discovery.

At this point, Piping Rock has nothing more to prove. Independent testing commissioned jointly by the parties proved the gummies always have contained the promised amount of magnesium, and Piping Rock has proved that the source of the magnesium is magnesium citrate, as advertised. Full stop. The whole point of allowing Plaintiff to choose retained samples to test was for Plaintiff to fold her tent after the testing proved the gummies contained the promised amount of magnesium. Plaintiff's counsel, however, has reneged on his agreement.[1]

Piping Rock has sought sanctions against Plaintiff's counsel because counsel never had a valid basis even to commence this suit. According to Plaintiff's Second Amended Complaint ("SAC"), Plaintiff's counsel's pre-suit "investigation" consisted of him putting four gummies on his own uncalibrated scale and finding that they weighed an average of 2,405 milligrams per gummy. Plaintiff's counsel consulted the Supplement Facts Panel ("SFP") on the Product's label and saw

[1] Plaintiff's counsel falsely states that Piping Rock had "ex parte communications" with the laboratory. *At Plaintiff's counsel's request*, Piping Rock contacted Eurofins to expedite the testing. Eurofins provided the test results to all counsel simultaneously, and Plaintiff's counsel notably does not dispute that the test results conclusively disproved his client's claim.

the "Total Carbohydrate" weight stated as 2 grams per gummy. Plaintiff's counsel then surmised that if all non-carbohydrate ingredients weigh only 405 milligrams (2,405mg total weight minus 2,000mg of carbohydrates), the gummy could not contain enough magnesium citrate to deliver the promised amount of magnesium. Counsel, however, inexcusably failed to consider the applicable federal regulation, 21 C.F.R. § 101.9(c)(6), requiring carbohydrate content to be stated on the SFP as a whole number, rounded up or down. The carbohydrate content of a gummy is *not* a full 2g, but a smaller weight rounded up to the nearest whole as the FDA regulation mandates. There is ample room in the gummy for a sufficient quantity of magnesium citrate, as the formula documents show and as the independent laboratory testing confirmed.

The SAC, notably, does not allege that Plaintiff's pre-suit investigation included sending the Product to a laboratory for testing. Plaintiff's counsel now claims to possess pre- and post-filing laboratory test results, but refuses to produce those results, claiming they are protected by work product immunity. Despite that refusal, Plaintiff's counsel cited the results in opposition to Piping Rock's sanctions motion. *See* ECF No. 44-1, Decl. of Sergei Lemberg ¶¶ 4, 6. Counsel represented to the Court that he tested the Product in 2024 and March 2025 and that the results were "consistent with Plaintiff's claims that the Supplements are mislabeled."

It is frankly impossible to believe that if Plaintiff's counsel truly possessed reputable test results supporting Plaintiff's claim, counsel would not have pleaded those results in the SAC and would not now be resisting production of them so strenuously. Regardless, Plaintiff cannot have it both ways. In any event, by acknowledging and characterizing these test results, Plaintiff has put the test results at issue and thus waived any privilege. *See New York Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 494 (2d Cir. 2019) ("A party waives the work product protection by taking actions inconsistent with its purpose, such as disclosing work product to its adversary, or by placing privileged documents 'at issue' in a litigation."); *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 40 (E.D.N.Y. 2013) ("[A] party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."). Further, unproduced test results—assuming they exist—cannot justify the continuation of discovery beyond its current bounds. "[A] litigant has to state a claim before he or she is entitled to discovery." *Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010) (collecting cases). "Generally, a party may not use discovery in order to gather evidence with which to state a claim in the first instance." *McGregor v. City of New York*, 2026 WL 472590, at *5 (E.D.N.Y. Feb. 19, 2026) (cleaned up).

To protect Piping Rock from further undue burden, given the conclusive nature of the discovery Piping Rock already has produced and the results of the parties' agreed testing, Piping Rock requests, pursuant to Rule 26(c), that the Court enter an order staying further discovery unless and until Plaintiff produces test results or other admissible evidence supporting her allegations about the Product's magnesium content. "Under Rule 26(c), the court can order a stay of discovery **or provide other protections to the moving party, including ordering discovery take place in a particular sequence.**" *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005) (emphasis added). Good cause exists to limit and sequence discovery here. The case turns on two questions—the Product's magnesium content and source—and such a "simple" dispute "calls for the use of limited targeted discovery that is proportional to the needs of the case." *Sibley v. Choice Hotels Int'l*, 2015 WL 9413101, at *7 (E.D.N.Y. Dec. 22, 2015); *see also McGregor*, 2026 WL 472590, at *5 (limiting discovery where the plaintiff failed to "identify, with specificity, why the breadth of discovery sought is relevant and proportional to the needs of the case as pled").

It is entirely appropriate to preclude further discovery from one party unless and until the other party has come forward with evidence of its own. *See, e.g.*, *Chambers v. Capital Cities/ABC*, 159 F.R.D. 429, 430-31 (S.D.N.Y. 1995) (additional discovery would be appropriate only "where more directly relevant and less burdensome discovery suggests the need to go further"); *Guzman v.*

*Vega*, 1993 WL 535543, at *1 (S.D.N.Y. Dec. 21, 1993) (overruling objection to order "authoriz[ing] defined inquiries to proceed first in order to permit an informed determination as to whether there is a factual basis for permitting more sweeping additional discovery"); *Luxury Cars of Bayside, Inc v. BMW of N. Am., LLC*, 2026 WL 592530, at *6 (E.D.N.Y. Mar. 3, 2026) (staying depositions while motion to dismiss was pending to avoid substantial burden and cost).

As part of a stay, the Court should quash Plaintiff's deposition notice to Piping Rock's Vice President of Quality, Reena Kiriyanthan, and its subpoena for deposition testimony from The Clorox Company, Piping Rock's predecessor manufacturer of the Product. Depositions are neither necessary nor warranted at this stage, with Plaintiff not having produced a shred of evidence supporting her claims, and with Piping Rock having produced both independent laboratory confirmation that the product provides the promised amount of magnesium and proof that the source of that magnesium is magnesium citrate, as the label also promises.

Piping Rock further requests an in-person discovery conference at Your Honor's convenience to discuss the requested relief.

**<u>Plaintiff's Position</u>**

*Introduction*

Defendant is attempting to stop discovery, yet again. The Court should reject the attempt. After months of delay, Defendant recently produced a formula specification for its Magnesium Supplement gummies (the "Supplements") for the relevant period that substantiates Plaintiff's claims that the Supplements did not have the promised 330 mg of Magnesium derived from magnesium citrate.

Defendant claims this specification has a "typo."[2] If it is a "typo," there are *four* of them in the specification: in the active ingredient amount, the individual input, % of the formula, and the gross total weight. This is not credible. There are no grounds to delay or stop discovery or to conduct it in a piecemeal, inefficient manner, which is what Defendant seeks. Instead, Discovery should proceed in regular order and Defendant should be compelled to answer discovery and produce witnesses as required under the Federal Rules of Civil Procedure.

Without getting deeply into specifics, Plaintiff points out that Defendant's own documents show that:

- Pre-March 2024 revision, each gummy had 533.50 of Magnesium Citrate, from which Piping Rock derived 33mg of elemental Magnesium. Multiplied by 4 gummies (serving size), this totals 132mg of elemental magnesium – almost 200 mg <u>less</u> elemental magnesium than shown on the label and double the deficit alleged in the Complaint.

- Post-March 2024 revision, each gummy had 751.3mg of Magnesium Citrate (a 40% increase), from which Calm derived 82.5 mg of elemental magnesium – 330 mg shown on the label. This formulation is correct and not at issue in the case.

That Defendant corrected its formulation just before the complaint was filed as other manufacturers were being sued on similar claims does not make the case frivolous or the claims meritless or sanctionable.

---

[2] Defendant also states it did not create the specification, that it was created by its predecessor manufacturer, and it does not know the genesis of this "error." Piping Rock's claim that this is the result of a typographical error is unsupported by any actual knowledge.

*Argument*

Plaintiff has served interrogatories, document requests, and noticed depositions. Defendant does not claim any specific discovery is vague, burdensome, or seeks privileged information and it should be compelled to answer all discovery as provided in the Federal Rules and to produce witnesses for deposition.

On January 15, 2026, Plaintiff served discovery requests seeking information and documents concerning the design, formulation, manufacturing, marketing and sale of Defendant's Supplements. These discovery requests are directly relevant to Plaintiff's claims that Defendant's Supplements are mislabeled and do not contain the claimed amount of magnesium from Magnesium Citrate, as well as Plaintiff's forthcoming motion for class certification and the requirements of Fed. R. Civ. P 23. Thereafter, the Parties have conducted myriad meet-and-confers via Microsoft Teams including on April 27, 2026 and May 14, 2026, and by email concerning Defendant's discovery responses.

However, those meet and confers proved unsuccessful and Defendant has only produced limited documents. Most recently, on May 22, 2026, Defendant produced Formula Specification FML-GM0042, Revision 03, which shows the formula for the Supplements was in fact dramatically *changed* in March 2024. The formulation shows that the Supplement contained drastically less Magnesium Citrate Tribasic Hydrate ("MCTH") before the change. After March 2024, Defendant increased the amount of MCTH so what was inside the bottle more closely matched what was on the label. But, before that reformulation, which includes nearly all of the Class Period and when Plaintiff purchased her product, the old formulation was in use. Defendant now asserts in a conclusory fashion that this was a "typographical error." As noted, if it's an error, it happened at least four times in the document under different value amounts. This is precisely the type of untested representation that Plaintiff is entitled to take discovery on, e.g., by deposing the relevant employees who were responsible for preparing the documents at issue. Thus, last week Plaintiff subpoenaed The Clorox Company and Abe Vaynberg, an employee at Better Health, who were responsible for manufacturing the Supplements during the Class Period and creating the above-referenced document. Plaintiff also recently service a notice of deposition on Reena Kiriyanthan, Vice President of Quality at Piping Rock, the individual who submitted multiple affidavits claiming that, e.g., the magnesium in the Supplements "has not changed since the Product's launch in 2019" (Dkt. No. 43-2 ("Kiriyanthan Decl." ¶ 3).

However, Defendant asserts it will not produce any additional discovery or witnesses for deposition absent a Court Order. Specifically, Defendant refuses to produce any of its employees for depositions or any additional documents unless Plaintiff produces its counsel's privileged laboratory testing – a claim untethered from Federal Rules' requirements. The proposal should be rejected. To begin, Defendant has not requested the testing performed by Plaintiff's counsel through formal discovery requests; it only requested discovery concerning instances where *Plaintiff* (not her counsel) "caused the Product to be tested." As Plaintiff noted in her discovery responses, the testing performed by Plaintiff's counsel and consulting experts in connection with this case is (1) not responsive to Defendant's discovery requests and (2) privileged and covered by the attorney work-product doctrine.

Yet even where there is alleged non-compliance with discovery requests (there is not here) "[d]iscovery is not a 'tit for tat' process" and even "'one party's noncompliance with discovery requirements does not excuse the other's failure to comply.'" *Scelsi v. Habberstad Motorsport Inc.*, 2021 WL 6065768, at *3 (E.D.N.Y. Dec. 22, 2021), *aff'd,* 2022 WL 2222900 (E.D.N.Y. June 21, 2022) (citing *Galgano v. Cty. of Putnam*, 2020 WL 5731783, at *1 (S.D.N.Y. Sept. 24, 2020)). "[I]t is well-established that a party cannot unilaterally refuse to fulfill its discovery obligations as

retaliation for another party's discovery violations." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014).

Further, the Court should disregard Defendant's various merits arguments. A "discovery motion is not the proper forum for raising challenges to the viability of [Plaintiff's] claims, nor are such challenges proper grounds to preclude otherwise appropriate discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (collecting cases).

In addition, the recent testing performed by Defendant's laboratory does not disprove Plaintiff's claims which are based on the Supplements not containing the promised amount of magnesium as magnesium citrate. I note parenthetically that Plaintiff ultimately terminated the process when it was discovered that Defendant was having *ex parte* discussions with the laboratory without Plaintiff's involvement, and the laboratory was unable to conduct the required test to identify the *source* of the magnesium, not just the amount of elemental magnesium in the Supplements.

Finally, Plaintiff's counsel has not waived the work product doctrine by affirmatively "put[ting] the test results at issue" in this case, as Defendant asserts. Instead, it was Defendant who attempted to place the test results at issue in this case: Defendant moved for sanctions against counsel on the false premise that Plaintiff's counsel did not test the Supplements. *See* Dkt. No. 43-1. It was in that context, in response to the Motion for Sanctions, where Plaintiff's Opposition merely noted that Defendant was wrong that no testing had occurred and in fact Plaintiff's counsel had performed testing as part of its own investigation. *See* Dkt. No. 44. However, Plaintiff did not partially disclose the substance or contents of her testing in that briefing or elsewhere such that the work product doctrine is waived.

In light of the foregoing, Plaintiff joins Defendant's request for a discovery conference with the Court to address Defendant's failure to produce responsive documents, witnesses and other discovery to Plaintiff.

Respectfully submitted,

| | |
|---|---|
| */s/ Sergei Lemberg* | */s/ Jeffrey S. Jacobson* |
| Sergei Lemberg | Jeffrey S. Jacobson |
| *Attorney for Plaintiff* | *Attorney for Defendant* |