**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andrea Greene, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>Piping Rock Health Products, Inc. d/b/a Natural Vitality,<br><br>Defendant. | Civil Action No.: 2:24-cv-08383-LGD |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION FOR SANCTIONS**

Plaintiff, Andrea Greene ("Plaintiff"), by and through her undersigned counsel, respectfully submits this Surreply in Opposition to Defendant Piping Rock Health Products, Inc. d/b/a Natural Vitality's ("Defendant") Motion for Sanctions. Documents produced by Defendant establish that the Supplements were substantially mislabeled throughout the bulk of the Class Period, delivering less magnesium than the label promised. This arithmetic is derived entirely from Defendant's own internal formula records — records that Defendant deliberately withheld until after the sanctions briefing was substantially complete, while simultaneously pressing this Court to sanction Plaintiff's counsel for pursuing claims that those very records confirm. The Motion for Sanctions must be denied. More than that, it must be recognized for what it is: a litigation tactic designed to impose costs, chill discovery, and pressure Plaintiff into dismissing claims that Defendant's own documents now show have merit. The Court should deny the motion, award Plaintiff her fees in opposing it, and direct Defendant's counsel to address the circumstances under which dispositive formula evidence was withheld during sanctions briefing.

## ARGUMENT

Defendant filed its Motion for Sanctions on the representation that Plaintiff's claims are frivolous and entirely without merit, and that Defendant's own testing and formula documentation conclusively prove the product is accurately labeled. That representation was false when made — Defendant's productions were inconclusive, internally contradictory, and incomplete — and it has now been affirmatively disproved by Defendant's own subsequently produced documents. Under *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000), sanctions under 28 U.S.C. § 1927 require clear evidence that claims are "entirely meritless" and pursued for an "improper purpose." Defendant cannot meet that standard.

Additional discovery exchanged after the Opposition was filed confirms that sanctions are not warranted and there remains a genuine dispute between the Parties concerning whether Defendant's Supplements were mislabeled.

First, on May 22, 2026, Defendant produced Revision 03 of Formula Specification FML-GM0042, which was in effect throughout nearly all of the Class Period, including when Plaintiff purchased the Product. (A copy of Revision 03 is being contemporaneously filed under seal as Exhibit A.) Revision 03 supports Plaintiff's allegations that one serving of the Supplements did not contain 330 mg of magnesium (as magnesium citrate) despite its labeling promising the same. That document shows:

- each gummy contained 533.50 mg of Magnesium Citrate Tribasic Hydrate ("MCTH"), not the 751.3 mg reflected in a separate post-March 2024 Revision 07;
- MCTH constituted 21.34% of the total formula weight of 2,500 mg per gummy. That input yielded only 33 mg of elemental magnesium per gummy. The four-gummy serving therefore contained approximately 132 mg of elemental magnesium — roughly **40% of the 330 mg label claim**;

- these figures appear in four interlocking fields in the specification (active ingredient amount, individual input, % of formula, and gross total weight), each consistent with the others; and

- even if one assumes, counterfactually, that the 33 mg figure is a typo, applying the same elemental-yield percentage Defendant insists has never changed (10.9%) to the 533.50 mg MCTH input still yields only 58 mg of magnesium per gummy (232 mg per four-gummy serving) — 30 mg less than alleged in paragraph 17 of the Amended Complaint and nearly **1/3 below** the label claim.

Moreover, Revision 03 is fully consistent with what actually went into production. According to the Master Manufacturing Batch Record Defendant produced, Magnesium Citrate Hydrate constitutes **22.69%** of the total formula — essentially identical to the 21.34% specified in Revision 03 in the second bullet point above and far short of the percentage required to deliver the 330 mg label claim from citrate. To meet the promised 330mg on the label, the "Magnesium Tribasic Hydrateused would have had to yield 15.5% elemental magnesium – 40% more than Defendant swears is the case the historically.

Thus, Defendant's recent document production, Revision 03, supports Plaintiff's claims. Pertinent here, this production further confirms that Defendant has not made a "clear showing of bad faith" or that Lemberg Law's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Jobar Holding Corp. v. Halio*, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025).

Second, Defendant's "apparent typographical error" (Dkt. No. 47) assertion is not credible. First, Defendant did not own the product line at relevant times and does not have any firsthand, admissible knowledge of what did or did not happen. Second, a typographical error is a single mistaken keystroke. Revision 03 contains four internally consistent numerical entries that reinforce one another and together describe a coherent (if underdosed) formulation that was changed in March 2024 to match the label. It is corroboration by the actual, and separate, production batch

records. Defendant also admits that it "did not create this document" and "does not know the genesis of the error," (Dkt. No. 48), meaning Defendant has no factual basis for the characterization it asks the Court to accept. For purposes of the Motion for Sanctions, Plaintiff's decision to not accept Defendant's conclusory speculation about whether or not Revision 03 contains a "typographical error" when Defendant is not the party that even created the document falls far short of a clear showing that Plaintiff or her counsel has acted in bad faith or for an improper purpose.

Third, Defendant's references to May 2026 testing (Dkt. No. 47) does not change the analysis or warrant sanctions. The Eurofins testing Defendant cites was conducted under a written protocol that Defendant's counsel proposed to Eurofins on May 5, 2026, with Plaintiff's counsel copied. That protocol expressly had two components: (1) total elemental magnesium by ICP-OES per AOAC 984.27 mod, and (2) "identification of magnesium source by citrate identification per USP/NF Magnesium Citrate Identification Tests A and B, or alternatively by ion chromatography." The stated purpose of component (2), in Defendant's counsel's own words, was "to confirm whether the magnesium in the finished product derives from magnesium citrate." Eurofins performed only component (1) and did not determine the source of the magnesium (component (2)).

When Defendant's counsel followed up on May 20, 2026, about component (2), Eurofins responded that it could not perform source identification on a finished product and disclosed: "We did also mention this to Piping Rock that we cannot perform ID testing on a finished product." Eurofins further confirmed: "the ICP-OES method requested for magnesium will not distinguish the magnesium source — it only reports total magnesium in the sample." Eurofins' confirmation that ICP-OES cannot identify the source means that the testing addresses, at most, half of the

protocol Defendant proposed and half of the Complaint's allegations. It is not conclusive evidence about whether or not the Supplements were mislabeled. Additionally, Eurofins' reference to having "also mention[ed] this to Piping Rock" reflects communications between the laboratory and Defendant in which Plaintiff's counsel did not participate and confirms that Defendant proceeded to report to the Court an elemental-only result knowing the test could not address the source question. None of this supports sanctions because the test results do not address a major component of Plaintiff's allegations.

The Court should not only deny the sanctions motion — it should examine the conduct that produced it. Defendant filed this motion while in possession of Formula Rev. 03, which demonstrates the product was under-delivering magnesium throughout the class period. It withheld that formula from Plaintiff and the Court until after the sanctions briefing was substantially complete. It simultaneously sought to stay all discovery while pressing for sanctions — attempting to lock Plaintiff out of the very documents that would allow her to respond. It produced three materially inconsistent formula documents in rolling fashion, each contradicting the last, while representing (without firsthand knowledge) that the formula had been unchanged since the product's launch.

Dated: June 18, 2026

Respectfully submitted,

By: *_/s/ Sergei Lemberg_*

Sergei Lemberg
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2026, a true and correct copy of the foregoing was served electronically by the U.S. District Court for the Eastern District of New York Electronic Document Filing System (ECF) and that the document is available on the ECF system.

By: */s/ Sergei Lemberg*
Sergei Lemberg