**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ANDREA GREENE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>PIPING ROCK HEALTH PRODUCTS, INC. d/b/a NATURAL HEALTH VITALITY,<br><br>Defendant. | X<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>X | CIVIL ACTION NO.<br>2:24-cv-08383-JMA-LGD |

**PIPING ROCK HEALTH PRODUCTS, INC.'S SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**


Jeffrey S. Jacobson
W. Joshua Lattimore
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 43rd Floor
New York, New York 10036
Tel.: (212) 248-3191
Jeffrey.Jacobson@faegredrinker.com
Joshua.Lattimore@faegredrinker.com

*Attorneys for Defendant*
*Piping Rock Health Products, Inc.*

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................... 1

RESPONSES TO THE COURT'S QUESTIONS ................................................................ 4

I. The Events That Have Transpired in the Case Since May 6, 2026. ....................... 4

II. The Impact, If Any, of the Fact That Piping Rock Did Not Raise Its Potential Sanctions Motion With the Court Until Sixteen Months After the Case Began........................................................................................ 6

III. The Impact, If Any, of the Fact That Piping Rock Did Not Appeal the Magistrate Judge's Discovery Rulings to the District Court. ................................ 8

IV. The Impact, If Any, of Judge Azrack's Denial of Piping Rock's Pre-Motion Letter Requests on May 13, 2025, and October 7, 2025. ........................... 9

CONCLUSION ......................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Fiallos v. Samuels*,
2026 WL 2972617 (S.D.N.Y. Oct. 2, 2026) ... 10

*Fogelson v. Snapple Beverage Corp.*,
2026 WL 2149968 (E.D.N.Y. Mar. 27, 2026) ... 7

*Lopez v. City of New York*,
2021 WL 2739058 (S.D.N.Y. July 1, 2021) ... 8

*Peters v. Keurig Dr. Pepper Inc.*,
2026 WL 2622455 (E.D.N.Y. Sept. 4, 2026) ... 7

*Pusateri v. Diageo N. Am., Inc.*,
2026 WL 2943357 (E.D.N.Y. Sept. 30, 2026) ... 7

**Statutes, Rules & Regulations**

21 C.F.R. § 101.9 ... 7

21 C.F.R. § 101.9(c)(6) ... 2

28 U.S.C. § 1927 ... 1, 10

Fed. R. Civ. P. 11 ... 1, 10

Attorney Sergei Lemberg has voluntarily dismissed his meritless claim that Piping Rock's "Calm Gummies" magnesium supplement does not (as its label states) contain 83 milligrams per gummy of magnesium derived from magnesium citrate. Piping Rock is pursuing sanctions pursuant to Fed. R. Civ. P. 11 because Lemberg never had a valid basis to allege that the product was mislabeled in the first place. Piping Rock also is pursuing sanctions pursuant to 28 U.S.C. § 1927 because even after Lemberg received conclusive proof of the gummies' magnesium content—including results from testing of past-manufactured product samples that *Lemberg specifically chose*—he prolonged the litigation through costly and unnecessary discovery steps. This memorandum will summarize Lemberg's continued misconduct since May 6, 2026.

Piping Rock recognizes that sanctions awards are rare, and that this Court ordered Piping Rock to engage in the discovery for which it now seeks reimbursement. But, as this supplemental memorandum explains, the Court ordered this discovery only after receiving incomplete information from Lemberg about the evidence in his possession. Lemberg abused the Court's indulgence to prolong litigation on claims that this evidence had already disproved. Section 1927 exists to prevent such conduct. The extraordinary step of sanctions is thus warranted on this record.

## FACTUAL BACKGROUND

Lemberg's initial complaint filed on December 6, 2024 (ECF 1); his Amended Complaint ("AC") filed on January 28, 2025 (ECF 6); and his Second Amended Complaint ("SAC") filed on June 05, 2025 (ECF 15), all pleaded only one theory: He alleged "it is impossible" for the product to contain the promised amount of magnesium because (1) each gummy must contain 751 milligrams of magnesium citrate to deliver 83 milligrams of magnesium from that source; (2) each gummy weighs 2,405 milligrams; and (3) the product's "Supplement Facts" panel on the label states that each gummy contains "2g" of carbohydrates, which Lemberg misunderstood to mean that the product only had room for 405 milligrams for magnesium citrate, which is not 751. *See* SAC ¶¶ 2, 9, 14-22. Lemberg's premise was simply wrong, however, because he ignored the

applicable federal labeling regulation, 21 C.F.R. § 101.9(c)(6), which required the Supplement Facts panel to state the gram weight of carbohydrates ("2g") as a whole number. A stated per-gummy carbohydrate weight of "2g," therefore, could mean the carbohydrate weight is 1.5 grams, 2.49 grams, or anywhere in between. The Supplement Facts panel alone, therefore, was never a sufficient basis for Lemberg to contend it was "impossible" for the product to deliver the promised amount of magnesium from magnesium citrate. And as soon as discovery started, Piping Rock demonstrated to Lemberg that the actual carbohydrate weight of each gummy is 1.54 grams, with each gummy also containing the necessary 751 milligrams of magnesium citrate.

The quantity of magnesium in a supplement is an objective fact. Any reputable lab can test the product and confirm it contained the promised amount. Piping Rock's pre-motion letters to the Court regarding potential motions to dismiss highlighted that "Plaintiff has not done any testing of the Supplements." ECF 10 at 2 (addressing the AC); *see also* ECF 16 at 2 (addressing the SAC). Lemberg nevertheless deliberately chose to rest on his misguided "impossibility" theory alone.

Although this case began on December 6, 2024, it remained in stasis as Lemberg amended it. Piping Rock sought leave to file a motion to dismiss the SAC in June 2025 (ECF 10), in response to which the Court (Azrack, J.) issued a text order on October 7, 2025, referring the matter to mediation. The mediation failed and, on January 12, 2026, Piping Rock renewed its request for leave to seek dismissal of the SAC (ECF 20), which the Court granted by text Order on February 6, 2026. On February 16, 2026, the Court so-ordered the parties' agreed briefing schedule, and the motion became fully briefed and submitted on April 24, 2026.

At an initial status conference on January 20, 2026, the Court (Dunst, M.J.) set a discovery schedule (ECF 25) calling for fact discovery to close on October 20, 2026. On February 27, 2026, Piping Rock filed a pre-motion letter seeking leave to file a motion to stay discovery while its motion to dismiss was pending. On March 5, 2026, the Court denied Piping Rock's request, holding a stay of discovery would prejudice Plaintiff.

By the time the Court denied the motion to stay discovery, however, Piping Rock already (on February 13) had produced independent lab test results to Lemberg proving the product contained the promised amount of magnesium. *See* Declaration of Jeffrey S. Jacobson ("Jacobson Decl.," ECF 43-5) ¶ 2 & Ex. A (ECF 43-6). Lemberg nevertheless continued to press his "impossibility" argument based on the Supplement Facts panel's "2g" per-gummy carbohydrate weight. He demanded production of the product's formula to prove it contained the promised amount of magnesium from the promised source. *See* Supplemental Declaration of Jeffrey S. Jacobson ("Jacobson Supp. Decl.") ¶ 2. One week after the Court declined to stay discovery, and as soon as Lemberg agreed to treat the formula as confidential, Piping Rock produced it, confirming that each gummy contains 751.3 milligrams of "Magnesium Citrate Tribasic Hydrate" and that the carbohydrate weight of each gummy is 1.54 grams. *See* Jacobson Decl. ¶ 5.

Lemberg then immediately abandoned his "impossibility" theory. He conceded that at least current batches of the product, produced using the formula, were as advertised, but he pivoted to an unpleaded theory that perhaps pre-litigation batches of the product used a different formula. *See* Jacobson Supp. Decl. ¶ 3. Lemberg demanded that Piping Rock produce an earlier-dated version of the formula. *See id.* Because Piping Rock purchased the Natural Vitality brand from another company in 2024, just prior to Lemberg's lawsuit, it had to search legacy records it obtained from the predecessor manufacturer. *See id.* Piping Rock did so and, on March 16, produced an earlier version of the formula showing the same magnesium citrate quantity. *See id.* That document also showed every revision made to the formula since the product's inception in 2019, which confirmed **no changes** to the amount of magnesium citrate in the formula at any time. *See id.*

Lemberg responded with a wholly unsupported conspiracy theory, contending in an email that Piping Rock may have "altered the formula for the gummies, manufactured a different version, [and] sent that version to a lab" for testing. *Id.* Lemberg had no explanation for why Piping Rock would attempt to perpetrate a fraud on the court that he could expose simply by purchasing a bottle

of the real product off a store shelf and sending it to a laboratory for testing. *See id.* And he pressed onward, trotting out one new theory after another in search of a basis to sue. *See id.* ¶ 5.

After Lemberg decided to continue the case, Piping Rock began considering other ways to demonstrate the futility of Lemberg's efforts. After determining it had custody from the predecessor manufacturer of retained lots of Calm Magnesium gummies dating back to 2022, Piping Rock sent Lemberg a list of retained lots and offered to allow him to choose "any three lots" from the list, which would then be sent to the world's leading independent lab (Eurofins) for testing, with the results delivered to Lemberg and Piping Rock simultaneously. Lemberg accepted that offer on May 6, 2026. *See* Jacobson Supp. Decl. ¶¶ 6-7.

**RESPONSES TO THE COURT'S QUESTIONS**

The Court asked Piping Rock to address the following four matters:

**I. The Events That Have Transpired in the Case Since May 6, 2026.**

On May 6, Lemberg identified the three retained lots he wanted Eurofins to test, one from 2023 and two from 2024. *See* Jacobson Supp. Decl. ¶ 7. Eurofins produced its test results on May 19, confirming that all three tested samples contained the promised amount of magnesium. *See id*. Thus, as of May 19, Lemberg had in his possession: (1) the formula for the gummies showing all changes since 2019; (2) examples of manufacturing reports showing the exact ingredients and quantities used to prepare the gummies for baking; and (3) independent test results showing that the retained samples Lemberg specifically chose contained the promised amount of magnesium. These documents left no doubt that the product's label was accurate.

At this point, with Lemberg having received evidence disproving his claims, Lemberg had a choice. He could have dismissed, and had he done so, Piping Rock (by express pre-agreement with Lemberg) would have withdrawn its sanctions motion. *See* Jacobson Supp. Decl. ¶ 8. But Lemberg chose instead to (1) mislead the Court with a letter dated May 28 in which he stated as purported fact that Piping Rock changed its formula and produced gummies with less than the

promised amount of magnesium; and (2) press for burdensome discovery steps. Armed with the Court's Order requiring Piping Rock to produce documents, he insisted (among other things) that Piping Rock gather and produce hard-copy batch records for every batch of the product manufactured since 2019, records of magnesium citrate purchases, and records pertaining to tests of that magnesium citrate to confirm its purity. *See id.* ¶¶ 9-10. Complying with these requests required Piping Rock to engage temporary employees, divert employees from their other duties, and search through hundreds of boxes of archived records that Piping Rock's predecessor stored chronologically rather than by product. *See id.* ¶ 11; Supplemental Declaration of Reena Kiriyanthan (Kiriyanthan Supp. Decl.) ¶¶ 2-4. Lemberg also subpoenaed and conducted a needless deposition of a former employee, Abe Vaynberg, making Piping Rock responsible for his attorney's fees. *See* Jacobson Supp. Decl. ¶ 12.

This additional discovery merely confirmed what the evidence available to Lemberg by May 19 had already made plain. The manufacturing records were cumulative, showing that every batch was made using the same formula and the same sufficient quantity of magnesium citrate. *See* Jacobson Supp. Decl. ¶ 11. Mr. Vaynberg's testimony likewise added nothing new: he simply confirmed the information reflected in the formula Piping Rock produced to Lemberg two months earlier. *See id.* ¶ 12. Although Lemberg finally bowed to reality and entered a Notice of Voluntary Dismissal, it was only after Piping Rock had incurred the burdens and expenses described above.

Lemberg likely will argue, as he did in his portion of the June 5 status update to this Court (ECF 48), that when Piping Rock produced all documents reflecting the product's formula, a single electronic spreadsheet reflected the wrong amount of magnesium citrate. All other versions of the formula had the correct amount. Piping Rock does not dispute that this warranted a modicum of investigation. But the best way for Lemberg to learn whether batches of the product manufactured around the time of the incorrect document's creation contained the promised amount of magnesium was to test them, which is exactly what Lemberg and Piping Rock agreed to do in April 2026. Two

of the three retained-sample batches Lemberg selected for testing were from that time period, and Lemberg knew by May 19 that the testing had disproved his theory. Yet Lemberg's May 28 and June 5 letters to the Court did not acknowledge those results. Instead, he argued that the incorrect spreadsheet justified more discovery without disclosing that the very testing he supported had disproved his core theory. Lemberg's omission left the Court with an incomplete picture, resulting in an Order that led to the unnecessary, expensive, and cumulative discovery described above.

Lemberg cannot justify the additional discovery by contending he had a valid basis to allege that the magnesium in the gummies came from magnesium oxide, not magnesium citrate. Lemberg had literally zero support for such a theory. In Lemberg's *Cohen v. eSupplements, LLC* case, where he also alleged use of undisclosed magnesium oxide rather than the promised magnesium glycinate, Lemberg quoted "complaints from consumers" that the product "resulted in side effects (*e.g.*, diarrhea, nausea, stomach aches) that are consistent with . . . magnesium oxide." *Cohen*, Case No. 2:23-cv-6387 (E.D.N.Y.) (ECF 43 ¶ 30). Lemberg's SAC contained no such allegations against Piping Rock. Nor did any document Piping Rock produced in discovery lend even arguable support to Lemberg's magnesium oxide theory. The SAC only speculated that the magnesium "*may* be derived from magnesium oxide," expressly acknowledging that the operative fraud theory did not depend on "[w]hether the Supplements contain the oxide or not." *See* SAC ¶¶ 21-22 (emphasis added). The SAC instead centered on whether the gummies contained the promised amount of elemental magnesium, which independent testing proved they did. *See id.* ¶¶ 8-32. Lemberg's belated conjecture about the possible source of magnesium, unsupported by the formula documents and untethered to any specific allegation of fact, was a red herring. It did not supply a justification for the burdensome discovery that Lemberg ultimately sought.

## II. The Impact, If Any, of the Fact That Piping Rock Did Not Raise Its Potential Sanctions Motion With the Court Until Sixteen Months After the Case Began.

As explained above, although Lemberg filed this action in December 2024, it was not actively litigated until January 2026, when the Court authorized the filing of a motion to dismiss and set a discovery schedule. In each pre-motion letter, Piping Rock raised with the Court the fact that Lemberg brought this case without alleging—through lab testing or otherwise—any valid basis to contend that the product contained less than the promised amount of magnesium derived from magnesium citrate.[1] Piping Rock's current counsel entered an appearance on February 5, 2026 (ECF 27), and almost immediately thereafter, Piping Rock raised with Lemberg the error he made in failing to consider the impact of 21 C.F.R. § 101.9 on his assumption about the "2g" whole-number statement of each gummy's carbohydrate content. *See* Jacobson Supp. Decl. ¶ 2. Neither then, nor after Piping Rock sent Lemberg a draft sanctions motion on February 26, did Lemberg acknowledge or address his error. Instead, his responses continued to assert only that it was "impossible" for a gummy to contain the promised amount of magnesium if it contained 2,000 milligrams of carbohydrates—a nonsequitur because that assumption was not true. *See id.* ¶¶ 2, 4.

Understanding that sanctions motions should be filed rarely and only for the most compelling of reasons, Piping Rock delayed pursuit of its sanctions motion until after it produced

[1] Piping Rock is aware of no relevant Second Circuit cases decided since briefing closed addressing (*e.g.*,) when plaintiffs must allege lab test results in cases like this. As persuasive authority, Piping Rock notes *Pusateri v. Diageo N. Am., Inc.*, 2026 WL 2943357 (E.D.N.Y. Sept. 30, 2026), which involved tequila the plaintiffs claimed was not made from "100% Blue Weber Agave," as advertised. The plaintiff based this claim on "news reporting" that many tequila products were "adulterated" and lab testing of "five samples" of the defendant's products which "revealed that the tested products were not made up of 100% agave." *Id.* at *2-4. The court dismissed the claims because the plaintiff's testing was too narrow, failing (for example) to test samples "taken from a store Plaintiffs frequented." *Id.* at *4-5. Similarly, in *Peters v. Keurig Dr. Pepper Inc.*, 2026 WL 2622455, at *13 (E.D.N.Y. Sept. 4, 2026), the court dismissed claims alleging the defendant used synthetic rather than natural citric acid without "point[ing] to laboratory tests or scholarly articles about the Products that would specifically support the claim that Keurig uses synthetic citric acid." Lemberg, like the plaintiff in *Peters*, did not allege the results of lab testing. Although Lemberg told the Court that he possessed "privileged" lab test results that he would neither produce nor rely upon, this cannot be the basis for a suit. *See Fogelson v. Snapple Beverage Corp.*, 2026 WL 2149968, at *4 (E.D.N.Y. Mar. 27, 2026) ("Without such methodological specifics, allegations of laboratory testing are treated as mere speculation disguised as empirical fact, leaving the court with no basis to draw a reasonable inference of deception.")

the product's formula on March 16, 2026. One week after Piping Rock produced that formula, it served upon Lemberg a revised motion for sanctions. *See* Jacobson Supp. Decl. ¶ 4. Taking a conservative view that the revised motion restarted the 21-day safe harbor, Piping Rock treated its motion as filed in April 2026. *See* ECF 36. Piping Rock respectfully submits that this motion became appropriate after it produced to Lemberg (1) the reasons why his assumption about the product's carbohydrate weight was wrong; (2) the product's formula, which confirmed both the unrounded carbohydrate weight of each gummy and the amount of magnesium citrate each gummy contained; and (3) independent test results from Eurofins confirming the product contained the promised amount of magnesium. Once Lemberg had that information, his liability theory evaporated and his refusal to dismiss the lawsuit became sanctionable.

## III. The Impact, If Any, of the Fact That Piping Rock Did Not Appeal the Magistrate Judge's Discovery Rulings to the District Court.

As the Court noted in denying Piping Rock's motion to stay discovery, a "Court has 'considerable discretion' under Rule 26(c) to determine whether a stay o[f] discovery is warranted." Text Order dated Mar. 5, 2026 (quoting, *e.g.*, *Lopez v. City of New York*, 2021 WL 2739058, at *1 (S.D.N.Y. July 1, 2021)). Piping Rock does not contend that the Court—armed only with what the parties told it within the confines of a page-limited pre-motion letter—abused its discretion. The same is true of the Court's decision to order more discovery on July 10, 2026 (ECF 54). For that reason, Piping Rock did not appeal either Order to the District Court.

Still, the burdens this unnecessary discovery imposed on Piping Rock are not the proverbial "cost of doing business." To be sure, when a court has found that a claim is plausible enough to enter the discovery phase, certain costs are unavoidable. Here, however, the Court had not ruled on Piping Rock's motion to dismiss. Lemberg's "impossibility" theory was indisputably wrong, belied by a federal regulation he failed to consider. Moreover, even if Lemberg had enough basis to demand *some* discovery—which he did not—the formula documents Piping Rock produced and

independent laboratory testing of retained samples Lemberg himself chose should have sufficed. Lemberg had no valid basis to demand much more voluminous and expensive document discovery.

Once Lemberg received Piping Rock's sanctions motion, he incurred risks each time he pressed for cumulative and expensive discovery. By March 2026, Lemberg already had abandoned the "impossibility" theory he pleaded in the SAC and was in search of some new basis to support a claim. He obviously hoped that, by undertaking a fishing expedition, he would find a basis to keep the suit alive or, at least, force Piping Rock consider settling a meritless claim. But Lemberg failed, and just as he expected to be rewarded if the actions he took bore fruit, his risky gamble and loss should have a monetary downside. The Court should direct Piping Rock to provide an accounting of its legal fees and out-of-pocket costs beginning on the date it served its sanctions motion on Lemberg (or whatever date the Court determines Lemberg should have dismissed the suit based on the information he received) and award that amount as a sanction.

## IV. The Impact, If Any, of Judge Azrack's Denial of Piping Rock's Pre-Motion Letter Requests on May 13, 2025, and October 7, 2025.

Piping Rock contends these decisions had no impact. On May 13, 2025, Judge Azrack denied leave to file a motion to dismiss the AC because Lemberg, by letter dated March 10 (ECF 13), undertook to "amend [the] complaint to address arguments raised" in Piping Rock's pre-motion letter. Lemberg thereafter filed the SAC, but the SAC did <u>not</u> meaningfully address the deficiencies Piping Rock noted. Piping Rock therefore requested again to file a motion to dismiss, but Judge Azrack, by order dated October 7, 2025, ordered the parties to mediation instead. Once that mediation failed, Piping Rock renewed its request to file a motion to dismiss on January 12, 2026 (ECF 20), and Judge Azrack granted that request by text order dated February 6, 2026. In other words, Piping Rock received leave to seek dismissal as soon as it became clear the matter would not resolve without judicial intervention. Piping Rock does not seek fees or costs related to the time expended before it served Lemberg with its sanctions motion on February 26, 2026.

"There are several relevant differences between Rule 11 and Section 1927." *Fiallos v. Samuels*, 2026 WL 2972617, at *13 (S.D.N.Y. Oct. 2, 2026) (granting sanctions under both provisions). Among these, "while misconduct under Rule 11 must be judged as of the time the paper was signed, Section 1927 invites attention to a course of conduct." *Id.* Here, as of the time Lemberg filed the SAC, he lacked a basis to sue because (1) Lemberg's assumption that the product's formula <u>could not</u> contain a sufficient quantity of magnesium citrate ignored a federal regulation that bore directly on his assumption; and (2) Lemberg did not allege lab test results supporting his serious charge, now proved false, that Piping Rock's product was mislabeled, as numerous Second Circuit courts have held is required before a plaintiff may legitimately allege claims such as those at issue in Lemberg's SAC. Once Lemberg unquestionably knew that the "2g" statement on the product's Supplement Facts panel was rounded up from 1.54 grams, leaving ample room for the necessary amount of magnesium citrate, he should have known his claim against Piping Rock was "entirely without color"—the bar for sanctions under Rule 11. *Fiallos*, 2026 WL 2972617, at *13. Rather than dismissing the case, however, Lemberg began a course of conduct, ignoring reality, demanding cumulative proof of the falsity of his claim, and inflicting discovery costs for no proper purpose. That course of conduct violated Section 1927.

## CONCLUSION

For the reasons stated above, and in Piping Rock's opening brief, the Court should sanction Lemberg pursuant to Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority. Sanctioning Lemberg would not chill <u>legitimate</u> consumer fraud litigation in this Court. It would, however, deliver an appropriate message to Lemberg and to like attorneys who would file frivolous consumer fraud "mislabeling" complaints without a valid basis and then keep the case alive even after receiving evidence conclusively disproving the bogus claim. The Court should require Lemberg to reimburse Piping Rock for its fees and costs incurred since it served its sanctions motion on him, including its fees associated with pursuing this motion.

Dated: New York, New York
October 9, 2026

FAEGRE DRINKER BIDDLE & REATH LLP

By: ___________________________________

Jeffrey S. Jacobson
Jeffrey.Jacobson@faegredrinker.com
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
Tel.: 212 248 3140
Jeffrey.Jacobson@faegredrinker.com

*Attorneys for Defendant*
*Piping Rock Health Products, Inc.*

## WORD COUNT CERTIFICATION

I, **W. JOSHUA LATTIMORE**, of full age and an associate at the law firm Faegre Drinker Biddle & Reath LLP, attorneys for Defendant Piping Rock Health Products, Inc. in this action, hereby certify, pursuant to Local Civil Rule 7.1(c), that the foregoing Supplemental Reply Memorandum, exclusive of the caption, table of contents, table of authorities, and signature block, contains 3,741 words as counted by Microsoft Word and is in compliance with the word-count and page limitations of Local Civil Rule 7.1(c) and the Court's order of October 1, 2026; and I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: New York, New York
October 9, 2026

By: W. Joshua Lattimore
W. Joshua Lattimore