**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Andrea Greene, *on behalf of herself and all others similarly situated,* Plaintiff, vs. Piping Rock Health Products, Inc. d/b/a Natural Vitality, Defendant. | Civil Action No.: 2:24-cv-08383-LGD |

# PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION FOR SANCTIONS

Plaintiff, Andrea Greene ("Plaintiff"), by and through her undersigned counsel, respectfully submits this Supplemental Memorandum in Opposition to Defendant Piping Rock Health Products, Inc. d/b/a Natural Vitality's ("Defendant") Motion for Sanctions, to address the subject matter identified in the Court's October 1, 2026, Order. For each of the following reasons, and those set forth in Plaintiff's Opposition and Sur-reply in Opposition to the Motion for Sanctions, the Motion should be denied.

Piping Rock waited sixteen months to raise sanctions, and then used the threat as leverage alongside its motion to dismiss while it withheld discovery. To support the motion, it told the Court that Eurofins had confirmed the source of the magnesium in the product, which never happened, and Eurofins admits it cannot. Piping Rock seeks to recover the cost of discovery this Court ordered and Piping Rock never challenged. Plaintiff investigated the formula discrepancy that Piping Rock's own production revealed. Piping Rock's supplemental memorandum does not engage with that record. Piping Rock's motion attacks counsel personally, impugns motives,

misstates the complaint, and misreads its own tests.[1] It should be denied in all respects and Plaintiff should be awarded fees for responding.

## ARGUMENT

### I. EVENTS SINCE MAY 6, 2026 SUPPORT DENIAL OF THE SANCTIONS MOTION

The discovery exchanged and events that transpired after May 6, 2026, confirm that sanctions are not warranted.

#### A. Brief Background

Plaintiff's theory from the outset was that the Supplements either contained less magnesium as magnesium citrate than claimed, or "[t]o the extent that one serving of the Supplements does contain 330 mg of elemental magnesium, *such magnesium is not derived solely from magnesium citrate and instead must come from an alternative, undisclosed source of magnesium*." Dkt. No. 1 ¶¶ 18-21 (emphasis supplied).

#### B. Discovery

First, after holding it back for more than a year, on May 22, 2026, Defendant produced Revision 03 of Formula Specification FML-GM0042 which it had obtained from a third party, Clorox. (A copy of Revision 03 was filed under seal at Dkt. No. 52.) As Plaintiff explains in her Sur-reply, the disclosure shows that the formula went through many revisions and Revision 03, which was in effect during the Class Period including when Plaintiff purchased the Supplement,

[1] Revealing personal animus of unknown origin that has no place in our profession or legal pleadings, Piping Rock inappropriately argues its case against "Lemberg" personally. It calls the action "his meritless claim" and the pleadings "Lemberg's initial complaint," "his Amended Complaint," and "his Second Amended Complaint." Def. Supp. Mem. at 1. It says counsel advanced a "wholly unsupported conspiracy theory," id. at 3; went "trotting out one new theory after another in search of a basis to sue," *id.* at 4; "abused the Court's indulgence," *id.* at 1; "obviously hoped" a "fishing expedition" would force a settlement, id. at 9; took a "risky gamble," *id.*; and "finally bowed to reality," *id.* at 5. It closes by asking the Court to "deliver an appropriate message to Lemberg and to like attorneys" who file "bogus" claims. *Id.* at 10. It reaches into a different case, *Cohen*, to suggest counsel had "literally zero support" here. *Id.* at 6. And its counsel's declaration places selected lines from informal emails between counsel before the Court, including counsel's own description of a hypothetical "amateurish fraud." Jacobson Supp. Decl. ¶¶ 2–3.

specified a magnesium citrate amount of 533.50 mg, approximately 29% less than the amounts notionally represented on the product label. *See* Dkt. No. 50 at pp. 2-3. Because Magnesium Citrate yields 11.4% elemental magnesium based on the supplier record Piping Rock had produced, a review of Revision 03 showed that Plaintiff's allegations that one serving of the Supplements did not contain the advertised 330 mg of magnesium (as magnesium citrate) was supported by the documents (533.50mg x .11.4% x 4 gummies = 243 mg). Thus, further discovery was essential.

Second, on May 28, 2026 and July 15, 2026, Plaintiff served subpoenas to testify on Abe Vaynberg, whom Revision 03 revealed to be a former Clorox employee who was responsible for its gummy operations and quality including the Supplements that were at issue in this case. *See* Exhibit A ("Vaynberg Tr.") 12:12-23, 16:8-17, 18:14-21, 20:3-11. Given that Defendant claimed variously that Revision 03 was a "typographical error" even though it admitted it "did not create this document" and "does not know the genesis of the error" (Dkt. No. 48 at p. 2), Plaintiff sought to depose Mr. Vaynberg to obtain first-hand evidence about Revision 03 from someone who, unlike the affiants Piping Rock has used throughout, was actually employed by the manufacturer of the Supplements during the relevant time period and actually worked on the product.

On August 13, 2026, Plaintiff deposed Mr. Vaynberg. He confirmed that (1) Plaintiff read Revision 03 correctly; (2) the document can be used to calculate how much magnesium is in each gummy; and (3) counsel's calculations of the Product's magnesium content from Revision 03 were accurate. Vaynberg Tr. 52:18–54:17, 57:6–8. He went further, testifying that Revision 03 was prepared by "an idiot who's doing poor calculations," it contained an "improperly calculated formula, which whoever calculated made a mistake," "was overlooked by whoever was a gatekeeper," and it was "not the representation of the final product." Vaynberg Tr. 56:9-11, 60:11-

62:7, 64:19-65:6. Moreover, he explained that the separate batch records had produced could not be used to prove or disprove the accuracy of Revision 03 (Vaynberg Tr. 87:9-18).

Thus, prior to the Vaynberg deposition nothing in the document production could tell Plaintiff that the numbers contained in Revision 03 were erroneous. In short, this deposition testimony confirms that counsel reasonably interpreted and relied upon Defendant's document production when pursuing Plaintiff's claims. Discovery was justified, and Counsel was far away from "clear[ly]" acting in "bad faith" and their actions were not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Jobar Holding Corp. v. Halio*, 2025 WL 1512574, at *3 (2d Cir. May 28, 2025).

**C. <u>Dismissal</u>**

After reviewing all class batch records produced by Defendant following Mr. Vaynberg's deposition and this Court's Order, on September 17, 2026, Plaintiff's counsel contacted Defendant and stated their intention to dismiss this lawsuit. Though filled with many errors, Revision 03 did not appear to have been used in production. Counsel did not condition dismissal on withdrawal of the motion for sanctions but requested, again, that Defendant withdraw it as meritless.

In response, Defendant declined but stated it would abandon and withdraw the sanctions motion (which the Parties are currently briefing and this Court now has to decide) if Plaintiff's counsel made a $20,000 donation to a charitable organization of Defendant's choosing.

The following day, September 18, 2026, Plaintiff filed the Notice of Dismissal. Dkt. No. 59.

**D. <u>May 6, 2026 Testing</u>**

Defendant again makes misleading arguments regarding the May 6, 2026 testing in its Supplemental Memorandum (Def. Supp. Mem. at p. 4). As Plaintiff noted in her Sur-reply, the

testing was conducted under a written protocol proposed by Defendant and agreed by Plaintiff where the Supplements would be tested for two components: (1) magnesium *amount*; and (2) magnesium *source*, i.e., to confirm whether the magnesium was derived from magnesium citrate or elsewhere. Dkt. No. 50 at pp. 4-5.

However, Eurofins performed only component (1) and did not determine the source of the magnesium (component (2)). Eurofins confirmed that the amount of Magnesium in the gummies was 82.5mg per gummy, but it did not determine the source. Instead, Eurofins advised after the testing was complete that it had previously told Defendant that it "cannot perform ID testing on a finished product" and that its testing "will not distinguish the magnesium source — it only reports total magnesium in the sample." Exhibit B. According to Eurofins's correspondence, Piping Rock knew that the source of magnesium in the gummy could not be tested by Eurofins, kept that information from Plaintiff, and now tells the Court the opposite. The elemental magnesium yield from the test did not square with Revision 03's 533.50 mg of elemental Magnesium per gummy,

Thus, Eurofins's confirmation that it could not identify the source of magnesium means that the testing addressed, at most, half of the protocol Defendant proposed and half of the Complaint's allegations. In no event does the testing support sanctions of any kind because the test results did not address a major component of Plaintiff's allegations, and any representation that the tests were completed or dispositive of the claims is misleading.

## II. DEFENDANT'S DECISION TO NOT RAISE THE SANCTIONS MOTION UNTIL APRIL 2026 SUPPORTS DENIAL OF THE SANCTIONS MOTION

Plaintiff filed this case on December 6, 2024 (Dkt. No. 1), but, as the Court recognized in its October 1, 2026, Order, Defendant did not raise the motion for sanctions until April 2026. The delay supports denial of the motion for sanctions.

The advisory notes to Rule 11 state that "[o]rdinarily the motion should be served promptly

after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Piping Rock's erroneous grounds for Rule 11 sanctions – Plaintiff's alleged failure to conduct laboratory testing[2] – were stated in its March 4, 2025 and June 26, 2025 pre-motion letters. Dkt. Nos. 10, 16. Therefore, if Defendant believed Plaintiff's Complaint was frivolous, it would have been sanctionable on the day that it was filed back in December 2024. However, even though it was represented by experienced counsel, Defendant waited until *April 2026* to notify the Court that it would seek sanctions.

This delay illustrates that the motion for sanctions was not based on the content of the Complaint but was instead improper gamesmanship, designed to chill Plaintiff's right to conduct discovery and pressure Plaintiff to dismiss this suit. This is further confirmed by Defendant's willingness to abandon the motion for sanctions if Plaintiff's counsel made a side payment to a charity picked by the Defendant. Moreover, since the Defendant's current counsel entered their appearance earlier this year shortly before it began threatening sanctions, they have, as the Court found, engaged in "delay tactics and the obvious gamesmanship." Dkt. No. 57-1 at pp. 5, 10 ("Reviewing docket entry 48 is in essence just yet another attempt by the defendants in this case to reargue a pending motion to dismiss and reargue a pending sanctions motion before me and utilize those arguments as a way to delay discovery in this case and stop discovery in this case.").

## III. DEFENDANT'S FAILURE TO OBJECT TO THE COURT'S DISCOVERY RULINGS SUPPORTS DENIAL OF THE SANCTIONS MOTION

Defendant's failure to object to the Court's March 5, 2026, and July 10, 2026, Orders denying Defendant's request to stay discovery (3/5/26 Order; Dkt. No. 54), also supports denying

[2] As Plaintiff noted in her Opposition and accompanying declaration, Plaintiff *did* conduct testing before filing the Complaint even though it was not alleged in the Complaint or relied upon in the case. *See* Dkt. No. 44-1 ¶¶ 4-6.

the motion for sanctions. Indeed, given that the Court explicitly allowed Plaintiff and her counsel to continue with discovery despite Defendant's arguments to the contrary, there are no grounds to sanction Plaintiff for engaging in the conduct (engaging in discovery) that those Orders permitted.

## IV. JUDGE AZRACK'S DENIAL OF DEFENDANT'S PRE-MOTION LETTER REQUESTS SUPPORTS DENIAL OF THE SANCTIONS MOTION

On March 4, 2025, and June 26, 2026, Defendant filed two pre-motion letter requests for leave to file a motion to dismiss on the basis that Plaintiff did not plead testing (Dkt. Nos. 10, 16), and Plaintiff responded that pleading testing results is not required. Dkt. No. 17 at p. 2. Judge Azrack denied both of Defendant's pre-motion letters. These rulings recognize that Defendant's identical argument for Rule 11 sanctions (Plaintiff's decision not to plead laboratory testing results) was meritless, Plaintiff was permitted to pursue these claims without explicitly pleading testing in her complaint, and this was not grounds to dismiss this case let alone sanction Plaintiff or her counsel.

## V. PLAINTIFF'S REQUESTS FOR FEES AND COSTS

For the reasons stated in her Sur-reply, Plaintiff believes the Court would be justified in awarding Plaintiff fees and costs in dealing with Defendant's unnecessary and ill-founded sanctions practice that has peppered the docket and wasted the Court's time, particularly since Piping Rock has already indicated it will appeal any adverse ruling. Plaintiff has been focused on the facts and the law throughout and takes no pleasure in seeking this relief here. However, Defendant delayed producing Revision 03 of the formulation until after it moved for sanctions, knowing full well that it would raise legitimate questions for discovery. Mr. Vaynberg's deposition more than substantiated Plaintiff's interpretation of the records. Defendant repeatedly misrepresented the tests Eurofins conducted and what they showed. The tactic of "defend and delay" moving for sanctions until more than a year into the case shows that the motion was used

as improper leverage.

Rule 11(c)(2) expressly provides the mechanism for obtaining fees when a sanctions motion is itself unwarranted: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Critically, the non-movant need not file a formal cross-motion to receive fees — the court may award reasonable expenses to the prevailing party *sua sponte*. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). An award under § 1927 is proper "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). The Court also has inherent power to impose sanctions for objectively inappropriate sanctions practice that is "entirely without color" and undertaken "for reasons of harassment or delay or for other improper purposes," as it was here. *Id*, 803 F.2d at 1272 (quoting *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 344 (2d Cir. 1986)) (internal quotation marks omitted).

Dated: October 23, 2026

ANDREA GREENE,

By: */s/ Sergei Lemberg*

Sergei Lemberg
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2026, I served the foregoing via email on the following counsel:

Jeffrey S. Jacobson
W. Joshua Lattimore
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 43rd Floor
New York, NY 10036
Email: Jeffrey.Jacobson@faegredrinker.com
Email: joshua.lattimore@faegredrinker.com
*Attorneys for Defendant*

By: *_/s/ Sergei Lemberg_*
Sergei Lemberg